**In the Matter of I. J. KNIGHT REALTY CORP., Bankrupt.**

**No. 27540.**

United States District Court,
E. D. Pennsylvania.

Aug. 17, 1973.

Richard A. Scully, U. S. Dept. of Justice, Tax Division, Washington, D. C., for the U. S.

Patrick J. DiQuinzio, Stephen P. Dicke, Dechert, Price & Rhoads, Samuel Marx, Philadelphia, Pa., for the Trustee.

## OPINION AND ORDER

HANNUM, District Judge.

Before the Court are cross-motions for summary judgment filed on behalf of the United States of America (hereinafter "Claimant") and the Trustee in bankruptcy of I. J. Knight Corporation (hereinafter "Trustee" and "Realty", respectively). This litigation arises out of the Government's assessment of federal income taxes and penalties against the Trustee for the fiscal years ended November 30, 1964 through and including November 30, 1970. Both parties have submitted a stipulation setting forth the pertinent facts. The initial question presented is whether the provisions of the Internal Revenue Code of 1954 require the Trustee to report and pay federal taxes on income generated during the liquidation and distribution of the bankrupt's estate. If the Trustee is obligated to pay federal taxes on income thus generated, there exist several questions concerning the nature and amount of the deductions to which he is entitled, if any, and the penalty provisions to which he and the estate may be subjected. In order properly to understand the legal questions raised, a full statement of the facts is necessary.

I. J. Knight Realty Corporation is a Pennsylvania corporation which owned as its principal asset the fire torn and now destroyed Fretz Building located at 1001–15 West Diamond Street, Philadelphia, Pennsylvania. Realty's sole business was to lease space and maintain the building for the benefit of its tenants.

On November 16, 1962, the corporation filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799. On the same day, Francis Shunk Brown, III, Esquire, was appointed receiver and was authorized to continue the operation of Realty's business. Approximately six weeks later, on January 1, 1963, the Fretz Building was totally destroyed by a fire of unusual intensity. The conflagration spread to adjoining premises, damaging or destroying the real and personal property of others, and destroying all of Realty's corporate and financial records. Because both Realty's principal asset and its corporate records were destroyed, no business remained for the receiver to operate.

Following the fire a number of damage claims were filed against the receiver based upon the theory that the fire resulted from the negligence of either the receiver or Realty, or their servants, agents, or employees, and that the claimants sustained damages by reason of the fire. All who filed such claims took the

position that the claims constituted administrative expenses of the arrangement proceeding and therefore took priority over the claims of general creditors. By the end of fiscal year 1963 these claims exceeded $1,800,000 and by the end of fiscal year 1964 they exceeded $3,500,000.

On April 18, 1963, Samuel Marx, Esquire, counsel for the receiver, filed a petition with the Bankruptcy Court for leave to retain the law firm of Dechert, Price & Rhoads as co-counsel due to its skill in defending negligence cases. On April 23, 1963, this petition was granted.

On May 14, 1963, pursuant to a voluntary consent filed on its behalf, Realty was adjudicated a bankrupt. In the superseding bankruptcy proceedings the receiver, Francis Shunk Brown, was elected trustee in bankruptcy. On August 23, 1963, he, as trustee, was authorized to retain Samuel Marx, Esquire and Dechert, Price & Rhoads as counsel.

From the time they were filed to the present all the fire damage claims have been contested. In resulting litigation the fire damage claimants' position that their claims were entitled to a priority over general creditor's claims as administrative expenses of the Chapter XI arrangement proceedings was upheld by the Supreme Court. See Reading Company v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). To date approximately 190 claimants have filed proofs of claim totalling nearly $4,400,000. The total assets marshalled by the trustee have a present value of approximately $650,000.

When Realty was adjudicated a bankrupt on May 14, 1963, its assets consisted of: (1) insurance claims against Lloyd's, London, Southwest Casualty Company, and Annapolis Fire and Marine Insurance Company in the gross amount of $1,440,000, (2) the land on which the Fretz Building once stood, and (3) cash amounting to $2,030.11. On September 26, 1963 the City of Phil-

adelphia instituted condemnation proceedings against all the land owned by Realty. The Trustee was subsequently awarded $140,000 plus interest for this land. On November 7, 1963, the Referee in Bankruptcy approved a settlement of Realty's claim against Lloyd's, London for $800,000. Later, in fiscal year 1966, the Trustee compromised Realty's claims against the remaining two fire insurance companies for $56,250. Consequently, the fair market value of Realty's assets on May 14, 1963 was $988,280.11, i. e., $856,250.00 in insurance claims, $130,000.00 in land, and $2,030.11 in cash.

On March 3, 1964 the Trustee was authorized to pay $162,789.45 out of the insurance proceeds to satisfy an outstanding mortgage on the Fretz Building that was held by the Presbyterian Ministers Fund. On March 25, 1964 he was authorized to deposit at least $500,000.00 of the insurance proceeds in interest-bearing accounts and to increase those deposits without further court order. Pursuant to this authorization, he deposited $500,000 in such accounts in fiscal year 1964, and $65,000 in fiscal year 1966.

On February 15, 1967 counsel for the Trustee first filed with the District Director the Trustee's federal income tax returns for the fiscal years 1963, 1964, 1965 and 1966. Each return was filed on a corporate income tax return Form 1120. Each return specified each item of income and each deduction for the fiscal year in question. Except for the gain or loss on the involuntary conversion of the Fretz Building, all of these items were computed to indicate the Trustee's taxable income or loss for the particular fiscal year. Based on the figures available to the Trustee, each return showed no taxable income after net operating loss carry-overs and, hence, no federal income tax due.

Each of the returns also carried the following notation to the Internal Revenue Service (hereinafter "IRS") ex-

plaining why certain figures could not be shown on the return:

"The Corporation is in a pending bankruptcy proceeding (Docket 27540) in the United States District Court for the Eastern District of Pennsylvania. Proof's of Claims have been filed on behalf of the Internal Revenue Service and numerous items making up prior returns are in dispute. Since correct figures have not been agreed upon and await resolution of these claims it is impossible to furnish the balance sheet, net operating loss deduction, etc. Upon resolution of the claims, more complete returns will be filed."

The covering letter from the Trustee's counsel, dated February 15, 1967 and filed with these returns, also pointed out that Realty's returns for fiscal years 1958–1962 were under audit before the Internal Revenue Service Appellate Division in Philadelphia. The covering letter requested that the enclosed returns be forwarded to the Appellate Division for disposition along with the prior years' returns.

The Trustee's return for fiscal year 1963 showed rental income of $7,628.85, miscellaneous income of $370.89 and various expenses aggregating $20,396.07, producing a loss from operations of $12,396.83. In addition, the return claimed a Section 461(f) deduction of $3,000,000 for "Damage Claims Asserted," producing a total net operating loss of $3,012,396.83.

In his return for fiscal year 1964 the Trustee reported the interest income of $6,815.79 earned on the deposits, as well as various deductions aggregating $78,575.64. The receipt of $800,000.00 in insurance proceeds was noted as follows in Part I of Schedule D, entitled "Gain from Disposition of Depreciable Property under Section 1245:"

"Fire insurance proceeds during year amounted to $800,000.00. Gain or loss on fire cannot be computed at this time. This return is under examination by the I.R.S."

The fiscal 1966 return had the exact same notation, except that the figure was changed to show the receipt of $56,250 in insurance proceeds in that year.

In his returns for fiscal years 1965 and 1966, the Trustee again reported the interest income earned in each year by the deposits and took various deductions. In each return the difference between the gross income and deductions as reported was offset by a net operating loss carry-over.

Returns for the fiscal years 1967–1970 were filed on or before their respective due dates and followed basically the same format as the fiscal 1965 return.

In 1971 IRS conducted an audit of the Trustee's returns for the fiscal years 1963 through 1970. At audit the Section 461(f) deduction in fiscal year 1963 was disallowed, as were various unpaid expense deductions and most net operating loss deductions. The adjusted cost basis for the Fretz Building was determined to be $237,036.78, producing a total gain on conversion of $619,213.22. The auditing agent allocated all of this gain to the Trustee's gross income for the fiscal year 1964. The taxable income before the net operating loss deduction for each of the fiscal years 1967–1970 was determined to be correct as reported.

In a letter dated November 12, 1971, IRS informed the Trustee of the proposed adjustments and the resulting deficiencies assessed against him based on the auditing agent's report, a copy of which was attached to the letter. Although the report determined that the Trustee had taxable income for the fiscal years 1965 and 1966, the report proposed that no ordinary tax be assessed on those amounts. However, a deficiency arising from the imposition of the Section 541 personal holding company tax was proposed for each of those fiscal years, as well as for the fiscal years 1968–1970.

As is fully set forth in the foregoing facts, the Trustee never operated any business or property of Realty. He was charged with but one responsibility, to marshal, liquidate, and distribute the estate of the bankrupt as it existed on May 14, 1963. The taxes assessed by the Claimant relate solely to the period of time after which Realty had been adjudicated a bankrupt. The initial question arising from these facts is whether a trustee in bankruptcy, charged solely with the responsibility of liquidating a corporate bankrupt, is required by the Internal Revenue Code of 1954 to pay federal income taxes on income generated by the bankrupt's assets during the period of liquidation. Because the marshalling and distribution of assets is not an activity inherently exempt from income taxation, the question before the Court turns upon a construction of the Internal Revenue Code of 1954. See 2A Collier on Bankruptcy ¶ 62.14, at 1518–1519 (14th ed. 1972).

For each of the fiscal years following 1963 the Trustee filed corporate income tax returns on Form 1120 as required by Subtitle F, Title 26, U.S.C., entitled, "Procedure and Administration." More specifically, the forms were filed pursuant to Section 6012(b)(3), 26 U.S.C. § 6012(b)(3) (1970), which provides:

> "In a case where a receiver, trustee in bankruptcy, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, *whether or not such property or business is being operated,* such receiver, trustee, or assignee *shall make the return of income* for such corporation in the same manner and form as corporations are required to make such returns." (Emphasis added)

There is no dispute that Section 6012(b)(3) of the 1954 Code merely requires a trustee in bankruptcy of a bankrupt corporation to file a corporate return for the bankrupt regardless of whether or not the trustee is operating the bankrupt's property or business. Equally important, there is no dispute that Section 6012(b)(3) refers *only* to the *making* of returns and not to the *payment* of the taxes.[1] The dispute in this case concerns the meaning of Section 6012(b)(3) when read in the light of related provisions of both the Internal Revenue Code of 1954 and the Judicial Code, Title 28 U.S.C.

The Trustee argues that the present provisions of the Internal Revenue Code do not impose any liability for the payment of federal income taxes upon a "non-operating" or "liquidating" trustee in bankruptcy. In support of his argument he refers to the absence of any provisions of the 1954 Code that expressly impose such tax liability upon a trustee in his position. At the same time, he contends that Section 960 of the Judicial Code, 28 U.S.C. § 960 (1970), is the only relevant statute authorizing the imposition of federal tax liability upon trustees in bankruptcy. Section 960 provides as follows:

> "Any officers and agents *conducting any business* under authority of a United States court shall be subject to all Federal, State and local taxes *applicable* to such business to the same extent *as if it were conducted* by an individual or corporation." (Emphasis added)

Reading this provision of the Judicial Code in conjunction with the absence of any broader provisions in the Internal Revenue Code of 1954, the Trustee argues that Congress has never expressly imposed federal income tax liability upon a trustee in bankruptcy who does not operate the business or property of the bankrupt.

The Claimant, on the other hand, contends that the Internal Revenue Code of 1954 does contain provisions imposing federal income tax liability upon a non-operating trustee in bankruptcy. While it agrees that Section 6012(b)(3) does

---

1. Brief of United States Government in Support of Motion for Summary Judgment, at 4.

not expressly impose liability for the payment of taxes upon such a trustee, it argues that such liability is derived from Section 6151(a) of the 1954 Code, 26 U.S.C. § 6151(a) (1970). That provision provides as follows:

"Except as otherwise provided in this section, when a return of tax is required under this title or regulations, *the person required to make such return* shall, without assessment or notice and demand from the Secretary or his delegate, *pay such tax to the internal revenue officer with whom the return is filed,* and shall pay such tax at the time and place fixed for filing the return (determined without regard to any extension of time for filing the return)." (Emphasis added)

It is to be noted that Section 6151, like Section 6012, is also part of "Subtitle F—Procedure and Administration." Read in context, the section directs a "person required to make such return" to pay any tax due the Government "to the internal revenue officer with whom the return is filed." Only by implication does it fix liability to pay taxes upon all persons required to make returns. By the same token, it is noted that the 1954 Code definition of "person" contained in Section 7701(a)(1), 26 U.S.C. § 7701(a)(1) (1970), nowhere expressly includes a "trustee in bankruptcy." [2] Thus, the Claimant is not in a position to rely upon any express language in the 1954 Code in order to establish the clear liability of the Trustee.

Because the liability of the Trustee is not self-evident, the best the Claimant can do is offer its interpretation of the intent of Congress in enacting the foregoing provisions. The Trustee, of course, is in much the same position in light of the fact that there is no provision in the Internal Revenue Code that expressly grants immunity from taxation to a non-operating trustee in bankruptcy. Likewise, simply because Congress has enacted Section 960 of the Judicial Code authorizing the taxation of trustees in bankruptcy who continue to conduct the business of the bankrupt, does not necessarily mean that Congress intended to preclude liability for taxes otherwise validly imposed. Exactly what Congress actually did intend is not readily apparent. Thus, it is necessary to look beyond the face of the several statutory provisions cited above in order to determine their meaning.

The argument advanced by the Trustee is not an over-ambitious exercise in semantics. The distinction for tax purposes between operating and non-operating trustees in bankruptcy was conceived long ago by Congress and first appeared in Section 13(c) of the Revenue Act of 1916.[3] In 1919 the Court of Appeals for the Second Circuit was presented with the same question facing this Court. In a *per curiam* opinion affirming the decisions of both the Referee in Bankruptcy and the district court, the Court stated: "We are quite clear that under section 13(c) of the act of 1916 (Comp.St. §

2. Section 7701(a) reads in pertinent part as follows:
(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—
(1) Person.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

3. Revenue Act of 1916, Sept. 8, 1916, c. 463, § 13(c), dealing with corporate returns, reads as follows:
"(c) In cases wherein receivers, trustees in bankruptcy, or assignees *are operating the property or business of corporations,* joint-stock companies or associations, or insurance companies, subject to tax imposed by this title, such receivers, trustees, or assignees shall make returns of net income as and for such corporations, joint-stock companies or associations, and insurance companies, in the same manner and form as such organizations are hereinbefore required to make returns, and any income tax due on the basis of such returns made by receivers, trustees, or assignees shall be assessed and collected in the same manner as if assessed directly against the organizations of whose businesses or properties they have custody and control." (Emphasis added)

6336m) only net income earned by a trustee *while operating the business of a bankrupt corporation* is taxable." (Emphasis added) In re Heller, Hirsh & Co., 258 F. 208, 209 (2 Cir. 1919).[4]

4. The Opinion of the Referee in Bankruptcy was adopted by the Court of Appeals in its entirety. The Referee's consideration of the problem is worthy of inclusion here:

"In my opinion the present motion depends for its determination upon a judicial interpretation of the act of September 8, 1916, a copy of which act accompanies this report. Such interpretation should be a fair one. It is not the duty of this court or of the government authorities to resort to Procrustean methods of interpretation against the taxpayer.

"I find nothing in the act of September 8, 1916, to indicate that Congress intended to impose an income tax upon a trustee in bankruptcy in respect to the assets of a bankrupt corporation which he has taken over to be marshaled and distributed among the creditors of the corporation. To my mind the text of the act of September 8, 1916, does not indicate any such purpose. This view of the act does not deprive the government of its just due. The dividends declared and distributed to the creditors are presumptively income in the hands of the latter subject to an income tax to be assessed against the latter. "Part I of the act of September 8, 1916 (Comp.St. § 6336a–6336iii), deals with the income tax on individuals.

\* \* \* \* \*

"There is not the slightest suggestion in Part I of the statute either that Congress intended to impose an income tax upon an insolvent individual liquidating his own estate or upon the liquidator of an insolvent individual's estate, nor is there any suggestion that it entered into the mind of Congress that such insolvent individual or his liquidator should be regarded as having a 'net income'.

"Such being my conclusion with respect to individuals dealt with in part I of the act, I pass to part II of the act (Comp.St. §§ 6336j–6336n), dealing with the income tax on corporations. I find nothing in part II to indicate that Congress intended to apply a different rule in the case of corporations from that enacted in the case of individuals. Section 10 (Comp.St. § 6336j) imposes an income tax upon the 'total net income' received by a corporation. Section 12(a), being section 6336*l*, Comp.St., provides for certain deductions before such 'net income' is ascertained.

"Great stress is laid by the government on the provisions of section 13(c) of the act

Some surplusage eschewed, the same provision was later reenacted as Section 239 of the Revenue Act of 1918.[5] Following the decision in In Re Heller, Hirsh & Co., *supra,* the same provision

of September 8, 1916. The presence of subdivision (c) in the act of September 8, 1916, and its absence from the prior act of October 3, 1913, has to my mind no significance in the present case in view of the peculiar language of subdivision (c). "The language used in subdivision (c) shows that the subdivision was not intended by Congress to apply in the case of receivers or trustees in bankruptcy or assignees who merely marshaled and distributed the assets of an insolvent corporation among its creditors. In terms subdivision (c) applies only in cases where receivers or trustees in bankruptcy or assignees '*are operating the property or business of corporations*' and thus may be in the receipt of a 'net income' as defined in the prior sections of the act. I regard the quoted words as of marked significance. "To my mind the subdivision was inserted in the act to meet the specified case of *the profitable operation of the business* of a corporation by the officers mentioned; for instance, the operation of the business of a railroad corporation by receivers or the operation of the business of a manufacturing corporation by a trustee in bankruptcy, etc.

"In either of such cases it is quite possible that the operation of the business might result in a net income, a result which Congress sought very properly to reach. See Scott v. Western Pacific R. R. Co., 246 Fed. 545, 548, 158 C.C.A. 515 (C.C.A. 9th Circuit, 1917). I repeat my conviction that in enacting subdivision (c) Congress had in mind the definite case so aptly described by the language used, and not the case of the officers mentioned when acting merely as liquidators." 258 F. at 210–211. (Emphasis added)

5. Revenue Act of 1918, Feb. 24, 1919, ch. 18, § 239, 40 Stat. 1081. Section 239 reads in pertinent part as follows:

"In cases where receivers, trustees in bankruptcy, or assignees *are operating the property or business of corporations*, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control." (Emphasis added)

was reenacted verbatim in the Revenue Acts of 1921,[6] 1924,[7] 1926,[8] 1928,[9] 1932,[10] 1934,[11] 1936,[12] and 1938.[13] It was finally incorporated verbatim into Section 52 (a) of the Internal Revenue Code of 1939 [14] where it remained unchanged until the enactment of the Internal Revenue Code of 1954. Had either the House Ways and Means or the Senate Finance Committees taken exception to the interpretation rendered by the Court of Appeals in In Re Heller, Hirsh & Co., *supra*, it is clear that repeated opportunities to act upon the matter were ignored.

What is presently Section 960 of the Judicial Code, 28 U.S.C. § 960 (1970), was enacted on June 18, 1934.[15] The purpose for its enactment is clearly stated in the report from the Committee on the Judiciary which accompanied the bill. The report, in its entirety, reads as follows:

> "The Committee on the Judiciary, to whom was referred the bill (H.R. 8544) making receivers appointed by any United States courts and authorized to conduct any business, or conducting any business, subject to taxes levied by the State the same as if such business were conducted by private individuals or corporations, after consideration, report the same favorably to

the House with the recommendation that the bill do pass.

> *The purpose of this bill is to subject businesses conducted under receivership in Federal court to State and local taxation the same as if such businesses were being conducted by private individuals or corporations.*

> The United States District Court for the Western District of Missouri in the case of Howe v. Atlantic, Pacific & Gulf Oil Co., et al (State of Missouri et al, Intervenors) (4 Fed.Supp. 162) recently held that a receiver operating a gasoline-and-oil distributing business under appointment by the Federal court was not liable for a sales tax on motor fuel levied by the State of Missouri. As a consequence of this decision, your committee is advised, the State of Missouri and other States having similar statutes are losing thousands of dollars of revenue per month.

> *No good reason is perceived why a receiver should be permitted to operate under such an advantage as against his competitors not in receivership,* and the States and local governments be deprived of this revenue." (Emphasis added)

While there can be little doubt that by enacting Section 960 Congress intended

6. Revenue Act of 1921, Nov. 23, 1921, ch. 136, § 239(a); 42 Stat. 259.

7. Revenue Act of 1924, June 2, 1924, ch. 234, § 239(a), 43 Stat. 287.

8. Revenue Act of 1926, Feb. 26, 1926, ch. 27, § 239(a), 44 Stat. 45.

9. Revenue Act of 1928, May 29, 1928, ch. 852, § 52(a), 45 Stat. 808.

10. Revenue Act of 1932, June 6, 1932, ch. 209, § 52(a), 47 Stat. 188.

11. Revenue Act of 1934, May 10, 1934, ch. 277, § 52, 48 Stat. 697.

12. Revenue Act of 1936, June 22, 1936, ch. 690, § 52, 49 Stat. 1670.

13. Revenue Act of 1938, May 28, 1938, ch. 289, § 52, 52 Stat. 477.

14. Internal Revenue Code of 1939, Feb. 10, 1939, ch. 2, § 52(a), 53 Stat. 27–28.

15. Act of June 18, 1934, ch. 585, 48 Stat. 993. In its original form, it reads as follows:

"[A]ny receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court *who is authorized by said court to conduct any business, or who does conduct any business,* shall, from and after the enactment of this Act, be subject to all State and local taxes applicable to such business *the same as if such business were conducted by an individual or corporation*: Provided, however, that nothing in this Act contained shall be construed to prohibit or prejudice the collection of any such taxes which accrued prior to the approval of this Act, in the event that the United States court having final jurisdiction of the subject matter under existing law should adjudge and decide that the imposition of such taxes was a valid exercise of the taxing power by the State or States, or by the civil subdivisions of the State or States imposing the same." (Emphasis added)

to prevent receivers or trustees in bankruptcy from enjoying State and local tax immunity, it is equally clear that Congress was only concerned with receivers or trustees who were operating or conducting the business in their charge.

In 1948 the Act of June 18, 1934 was included at Section 960 in the revision and codification of what is now Title 28 of the United States Code. By Section 52(a) of what was then the existing Internal Revenue Code, receivers or trustees operating the property or business of a corporation were liable for the payment of federal taxes. To confirm this liability and presumably to avoid the argument that the omission of any reference to such liability was intended to create an immunity from it, the language of Section 960 was changed by inserting the word "Federal" before the word "State." [16] That Congress did not intend to expose receivers or trustees to federal tax liability beyond that imposed by existing law is confirmed by the House Report [17] accompanying the revision. Treating the change summarily, the report merely states:

"Word 'Federal' was added before 'State' *in recognition of* the liability of such officers for Federal taxes under the revenue laws." (Emphasis added)

Since 1948, Section 960 has remained unchanged.

The foregoing discussion of the legislative history of Section 960 and the provisions preceding Section 6012(b)(3) has been undertaken to provide an understanding of the setting in which Section 6012(b)(3) was enacted in 1954. From it, the conclusion is unavoidable that at no time prior to 1954 did Congress even arguably intend to impose federal income tax liability upon "non-operating" or "liquidating" trustees in bankruptcy. Was it the intention of

Congress in 1954 to change this policy that had prevailed for thirty-eight years?

While it is clear from a fair reading of Section 6012(b)(3) that Congress in 1954 did intend to alter the prior law by imposing a new obligation upon non-operating trustees to file corporate income tax returns, the language of the section does not support the conclusion that Congress also intended to broaden non-operating trustees' liability for the payment of taxes beyond the liability imposed by existing law. That Congress intended to alter the filing requirements alone is confirmed by both the House and Senate Committee Reports. The entire reference in both reports to the changes made by Section 6012 is as follows:

"Subsection (a)(1) of this section differs from existing law in that it provides that any taxpayer who has attained the age of 65 before the close of his taxable year shall be required to make a return only if he has for the taxable year a gross income of $1,200 or more. As under existing law, all other individuals are required to file income-tax returns if they have gross income of $600 or more for the taxable year.

"Subsection (a)(4) of this section conforms the filing requirement for trusts to the new exemption of $300 granted certain trusts under subtitle A. A clarifying change from the wording of existing law has been made in subsection (b)(3), *relating to the filing of corporation returns* by receivers or other fiduciaries." U.S. Code Cong. & Admin.News, 1954, pp. 4543, 5211 (Emphasis added)

Moreover, the question of imposing tax liability upon non-operating trustees was never considered in either the hearings before the House Ways and Means

16. As stated earlier, Section 960, 28 U.S.C. § 960 (1970) presently reads as follows:

"Any officers and agents conducting any business under authority of a United States Court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

17. H.R.Rep.No.308, 80th Cong., 1st Sess., App. 102–103 (1947).

Committee [18] preceding the submission of the proposed revision of the revenue laws or in the later hearings before the Senate Finance Committee.[19] If Congress intended to impose tax liability upon non-operating trustees, there is no evidence to suggest that it chose to implement that intent through Section 6012(b)(3). What remains to be considered is whether Section 6151(a) fixes the tax liability of a non-operating trustee when read in conjunction with Section 6012(b)(3) as is argued by the Claimant.

As has been stated previously, Section 6151(a) only impliedly subjects all persons required to make returns to liability for the payment of taxes. To compound this problem the word "person" is nowhere defined in the Code to include a trustee in bankruptcy.[20] These infirmities in the Claimant's argument are sufficient in and of themselves to be fatal.[21] What is equally troublesome, however, is that the Claimant's position conflicts with the provisions of Section 6011 of the Code, 26 U.S.S. § 6011 (1970).

The Claimant's argument proceeds upon the assumption that it is the duty of filing a return that imposes liability for the payment of taxes. This assumption runs contrary to the provisions of Section 6011 which sets forth not only

the general rule that makes the imposition of tax liability a prerequisite to the duty of filing a return,[22] but which also recognizes situations in which returns are required regardless of whether or not tax liability is imposed. *For a situation within this exception to the general rule, Section 6011(e) specifically directs the reader to consult Section 6012.*[23] Combining this additional problem with those that otherwise beset the Claimant's interpretation of Section 6151(a), there is little justification for the conclusion that Congress intended Section 6151(a), when read in conjunction with Section 6012(b)(3), to impose tax liability upon anyone not otherwise expressly made so liable.

The preceding discussion has been prompted in large part because the problem of determining the meaning of Section 6012(b)(3) is not novel to the judiciary. It has been twice considered since the enactment of the Internal Revenue Code of 1954. In 1959 the question was considered by the Court of Appeals for the Ninth Circuit in United States v. Sampsell, 266 F.2d 631 (9th Cir. 1959), rev'g. In Re F. P. Newport Corp., 144 F.Supp. 507 (S.D.Cal.1956). In that case the Court had before it the question of the liability of a trustee in bankruptcy for the payment of taxes with respect to taxable years both before and after

---

18. Hearings Before House Committee On Ways And Means, 83rd Cong. 1st Sess., pts. 1–4 (1953).

19. Hearings on H.R. 8300 Before Senate Committee On Finance, 83rd Cong., 2nd Sess., pts. 1–4 (1954).

20. See footnote 2.

21. In Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1919), the Supreme Court adopted a well established rule applicable to the statutory construction of tax laws:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen." 245 U.S. at 153, 38 S.Ct. at 53.

22. Section 6011(a), 26 U.S.C. § 6011(a) (1970), provides as follows:

"(a) General rule.—When required by regulations prescribed by the Secretary or his delegate any person *made liable for any tax imposed by this title*, or for the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary or his delegate. Every person required to make a return or statement shall include therein the information required by such forms or regulations." (Emphasis added)

23. Section 6011(e), 26 U.S.C. § 6011(e) (1970), provides as follows:

"(e) Income, estate, and gift taxes.—For requirement that returns of income, estate, and gift taxes be made *whether or not there is tax liability*, see sections *6012* to 6019, inclusive."

1954. In resolving the question, it first concluded that the trustee in bankruptcy was operating the property or business of the bankrupt. In a portion of the opinion that was thereafter made unnecessary to the disposition of the case, it concluded nonetheless that for the taxable years following 1954 the trustee was liable for the payment of federal taxes under Sections 6012(b)(3) and 6151 regardless of whether or not he was operating the property or business of the bankrupt. In so doing, the Court adopted the argument presently advanced by the Claimant.

The most recent and, by far, the most exhaustive consideration of the question was undertaken by the Honorable James E. Yacos, Referee in Bankruptcy for the Southern District of Florida. After considering the opinion in *Sampsell* at length, he concluded that while both operating and non-operating trustees in bankruptcy are required to file income tax returns pursuant to Section 6012(b)(3), it was not the intention of Congress that non-operating trustees be required to pay tax on income generated by the estate during the liquidation period. In so doing he adopted the argument presently advanced by the Trustee. His opinion is published in In Re Statmaster Corporation, 332 F.Supp. 1248 (S.D.Fla.1971).[24]

In reaching a conclusion contrary to that of the Court of Appeals in *Sampsell*; the Referee in *Statmaster* considered at great length the case law prior to the enactment of Section 6012(b)(3); that section's legislative history; the conceptual difficulties encountered in construing the language of Section 6012(b)(3) to impose tax liability upon a trustee in bankruptcy; and the dramatic inequities that would result from the imposition of federal tax liability upon a truly non-operating trustee. None of these matters were considered by the Court in *Sampsell*. Having made an independent and extensive effort to determine the intent of Congress when enacting the several statutory provisions that control the question presented, this Court can find nothing to suggest that Congress ever intended to impose federal tax liability upon non-operating trustees in bankruptcy either before or after the enactment of the Internal Revenue Code of 1954. For this reason, and for the reason that the Court's comments with respect to Sections 6012(b)(3) and 6151 were unnecessary to its disposition of the case, this Court is persuaded that the *Sampsell* opinion does not constitute a decisive precedent on the question presented.

In this Opinion the Court has set forth its analysis of the statutory provisions that control the question presented. The Court's conclusion that Congress has never intended to impose federal tax liability upon non-operating trustees is strongly reinforced by Referee Yacos' analysis of the case law prior to the enactment of Section

24. The referee's decision was reversed on jurisdictional grounds. The trustee had not filed the Form 1120 tax return required by Section 6012. Raising the same question as is raised here, he petitioned the court for an Order to Show Cause directing the Government "to show cause why the trustee should not be authorized to file the tax return . . . and why upon filing the same an order should not be entered . . . 'relieving and discharging said trustee from any and all liability for internal revenue service taxes arising from the receipt of interest from interest bearing accounts.'" 332 F. Supp. at 1250. The referee entered the Order to Show Cause and after extensive research reached the conclusion stated above. The District Court, upon petition to review, reversed the referee's decision on the procedural basis that the relief sought by the trustee was in the nature of a declaratory judgment respecting federal taxes prohibited by 28 U.S.C. § 2201. In disposing of the matter on jurisdictional grounds, the District Court specifically avoided considering the substantive question of a non-operating trustee's federal tax liability. The Court, however, was sufficiently impressed with the referee's "thoughtful" opinion to publish it in its entirety along with its Memorandum and Order.

In light of the District Court's disposition of the matter, this Court does not attach the same significance to the reversal of the referee's decision as does the Claimant.

6012(b)(3); the conceptual difficulties in construing the language of Section 6012(b)(3) to impose tax liability upon a trustee in bankruptcy; and the extraordinary tax consequences that would result from the imposition of federal tax liability upon a truly non-operating trustee.[25] It would serve no purpose to restate these considerations here. Rather, to the extent that this Opinion and that of the Referee do not overlap, what he has stated with regard to the present question is adopted in its entirety by this Court.

The Trustee's motion for summary judgment will be granted and the Claimant's will be denied.

---

25. In the present case for example, the Claimant has asserted that the Trustee is subject to the Section 541 Personal Holding Company Tax. Was it the intent of Congress that a bankrupt estate be subject to such a penalty tax when neither the trustee in bankruptcy nor the bankrupt corporation can avoid the penalty by declaring a dividend? For a discussion of the inequities resulting from the imposition of a tax on capital gains, see Krause and Kapiloff, "The Bankrupt Estate, Taxable Income and the Trustee in Bankruptcy." 34 Fordham L. Rev. 401 (1966).