In the Matter of **I. J. KNIGHT REALTY CORP.**, Bankrupt.

Appeal of **UNITED STATES** of America, Claimant.

No. 73–2008.

United States Court of Appeals, Third Circuit.

Argued June 28, 1974.

Decided July 31, 1974.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, Karl Schmeidler, Attys. Tax Div. Dept. of Justice, Washington, D. C. for claimant; Robert E. J. Curran, U. S. Atty., of counsel.

P. J. DiQuinzio, Stephen P. Dicke, Dechert Price & Rhoads, Philadelphia, Pa., for bankrupt; Gordon W. Gerber, Arthur E. Newbold, III, Dechert, Price & Rhoads, Philadelphia, Pa., of counsel.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge:

Is a "non-operating" trustee of a bankrupt corporation liable for the payment of federal taxes on income generated during the liquidation and distribution of the bankrupt estate? That is

the primary question presented on this appeal.[1]

## I.

The facts of the case are undisputed. I. J. Knight Realty Corporation, the bankrupt, owned as its principal asset a building located in Philadelphia. Its sole business was the leasing of space in the building, and the provision of maintenance services to its tenants.

Knight filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in November of 1962. A receiver was appointed and authorized to continue operation of Knight's business. Shortly thereafter, in January of 1963, Knight's building was destroyed by fire; consequently, no business remained for the receiver to operate.

In May of 1963, Knight was adjudicated a bankrupt, and a trustee was appointed. At that time, the bankrupt's assets consisted of the following: (1) claims against various insurance companies in the amount of $1,440,000; (2) the land on which Knight's building had stood; and (3) cash in the amount of $2,030.11.[2] The City of Philadelphia, in September of 1963, instituted condemnation proceedings against the land owned by Knight, and the trustee was subsequently awarded $130,000. plus interest for the land. In November of 1963, the bankruptcy referee approved a settlement in the amount of $800,000. for Knight's claim against one of the insurance companies. In March of 1964, the trustee, pursuant to authorization by the Bankruptcy Court, paid $162,789.45 out of the insurance proceeds to satisfy an outstanding mortgage on Knight's building. Later that same month, the trustee deposited $500,000. of the insurance proceeds in interest-bearing accounts, and in fiscal year 1966 deposited another $65,000.

Counsel for the trustee, in February of 1967, filed with the District Director of Internal Revenue the trustee's federal income tax returns for the fiscal years 1963 through 1966. Each return was filed on a corporate income tax Form 1120, and each set forth various items of income and deductions, including interest earned on bank deposits. Based on the trustee's computations, each return showed no taxable income, and hence no tax due, after giving effect to net operating loss carryovers.[3] Returns for the fiscal years 1967 through 1970 were filed in due course, and also showed no taxable income for the years in question.

The Commissioner in 1971 conducted an audit of the trustee's returns for the years 1963 through 1970. Various adjustments in the trustee's computations were made by the Commissioner and resulting deficiencies were determined.

In March of 1973, the Commissioner filed a proof of claim against the trustee in the bankruptcy proceeding, asserting that the trustee was liable for payment of corporate income taxes, personal holding company taxes, and penalties and interest in the total amount of $366,736.-05 for various of the years 1963 through 1970. The income in question was claimed to have been derived by the trustee from a capital gain on the condemnation sale of the land, and from interest on the insurance proceeds that

1. The taxpayer also challenges the imposition of a personal holding company tax, the taxation of certain capital gains, and the Commissioner's calculation of the amount of taxes, interest and penalties due for certain years. Since the district court's grant of the taxpayer's motion for summary judgment was based upon the proposition that a non-operating trustee is simply not liable for any federal tax on the bankrupt's income, we shall resolve that issue alone, and leave for further treatment by the district court the other questions.

2. Speaking retrospectively, the district court stated, at page 4 of its opinion, that "the fair market value of the company's gross assets as of May, 1963, had equalled $988,280.-11–$856,250. in unsettled insurance claims, $130,000. in land, and $2,030.11 in cash."

3. The fact that the taxpayer calculated that no tax was due, and did so by claiming loss carryovers, might indicate that he thought he was liable for taxes on the bankrupt's income, assuming of course that there was net income.

had been deposited in interest-bearing accounts.

Upon cross-motions for summary judgment the district court, 366 F.Supp. 450, held that a "non-operating" trustee is not liable for payment of federal income taxes, and entered judgment for the trustee. The Commissioner has appealed.

## II.

Whether a trustee in bankruptcy is liable to pay federal income taxes on the bankrupt's income is determinable, certainly in the first instance, by reference to the Internal Revenue Code. Section 61 of the Code sweepingly defines "gross income" (the base for calculating taxable income) as "all income from whatever source derived."[4] However, section 61 does not purport to establish the tax liability of particular classes of individuals. Rather, that task is accomplished by the sections grouped under Subtitle F of the Code.[5] Section 6012(b)[6] provides in part as follows:

(b) *Returns Made by Fiduciaries and Receivers*—

(3) *Receivers, trustees and assignees for corporations*—In a case where a . . . trustee in bankruptcy . . ., by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such . . . trustee . . . shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.

Section 6151,[7] part of the same Code Subtitle, states that:

"Except as otherwise provided in this section, when a return of tax is required under this title or regulations, the person required to make such a return shall . . . pay such tax . . . at the time and place fixed for filing the return. . . ."

There is no provision in the Code that explicitly exempts a trustee in bankruptcy from the duty imposed by section 6151. Thus, application of the plain terms of that section require that a trustee in bankruptcy—provided he is required to file a return under section 6012—must pay taxes on the income generated by a bankrupt estate. Since the trustee here concedes that he "ha[d] possession of or [held] title to all or substantially all [of Knight's] property" within the meaning of section 6012, it would appear that he was required to file returns for the years 1963 through 1970, and so is liable for the taxes levied on Knight's income for those years.

The taxpayer mounts a multifaceted attack on this conclusion. His first contention is that a literal reading of section 6151 does *not* result in the imposition of any tax liability upon a non-operating trustee. This argument appears, at first, to draw sustenance from a difference in the terminology used in sections 6012 and 6151. Section 6012 provides that a non-operating trustee in the taxpayer's circumstances must file a "return of income," while section 6151 speaks in terms of a "return of tax." Consequently, argues the taxpayer, the obligation to *pay* (to file a "return of tax") established by 6151 does not automatically befall all those who are required by section 6012 to file a "return of income." The taxpayer maintains

---

4. 26 U.S.C. § 61. Section 61 specifies that income derived from interest and from dealings in property—the two sources of Knight's income from 1963 through 1970—are includable in gross income.

5. Subtitle F is headed "Procedure and Administration." The provisions pertinent to

this case appear in Chapters 61 and 62, styled respectively as "Information and returns" and "Time and place for paying tax."

6. 26 U.S.C. § 6012(b).

7. 26 U.S.C. § 6151.

that, before concluding that section 6151 results in any tax liability to a trustee, we must find in the Code an explicit direction to non-operating trustees to file "returns of tax." Not surprisingly, the Code is devoid of such a direction. The final step in the trustee's syllogism is that a non-operating trustee is, not liable for the payment of taxes on the bankrupt's income.

The appeal of this argument is quickly deflated by a glance at the realities of taxation and of the underlying schema of the Code. The "return of income" required to be filed under section 6012 is, for a trustee of a bankrupt corporation, Form 1120.[8] A trustee in bankruptcy need file no other basic federal income return on behalf of the corporation, except perhaps informational returns setting out the amount of distributions in liquidation.[9] Form 1120 provides space for the listing of the bankrupt's income, its deductions, and significantly the "tax due" for the taxable year.

■ Therefore, the "return of income" required by section 6012 is, we think, precisely the same "return of tax" to which reference is made by section 6151.[10] Accordingly, we reject on a terminological basis the taxpayer's argument that sections 6012 and 6151 cannot be read in *pari materia*.[11] The two statutory sections, read in conjunction, impose tax liability on one who, like this taxpayer, is required to file a "return of income" and who, in fact, has had taxable income.

The taxpayer seeks to resuscitate and buttress his interpretation of sections 6012 and 6151 by referring to their statutory predecessors. Section 52(a) of the 1939 Code, for instance, imposed an obligation to file an income tax return and to pay any tax due only upon trustees in bankruptcy who were actually *operating* the business of the bankrupt. Similar provisions were in the revenue laws since the Revenue Act of 1916.[12] Cases interpreting these early statutes uniformly denied that a *non-operating* trustee had any obligation to file a return or to pay tax on the income of the bankrupt estate,[13] despite a contrary implication in the corresponding Treasury Regulations.[14] Section 6012(b)(3) was enacted in 1954 and altered prior law at least to the extent of imposing upon certain non-operating trustees the duty of filing returns. However, argues the taxpayer, there is a positive indication in the legislative history of that section that Congress had no intention in 1954 of subjecting a non-operating trustee to a *payment* obligation, an obligation that had clearly not existed under prior law.

Taxpayer's expositional odyssey through sections 6012 and 6151 relies heavily on section 960 of the Judicial Code,[15] which provides as follows:

"Any officers and agents *conducting any business* under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

8. Form 1120 is headed "U. S. Corporation Income Tax Return." It is the form, in fact, filed by the trustee here in each of the taxable years 1963–1970.

9. *See, e. g.,* Forms 966 and 1099L.

10. The taxpayer does not contest that he was required by § 6012(b)(3) to file a Form 1120.

11. The taxpayer points out that § 6011(e) of the Code requires "that returns of income . . . taxes be made whether or not there is tax liability." However, this provision only tends to confirm that a "return of income" and a "return of tax" are one and the same thing.

12. *See, e. g.,* Revenue Act of 1916, c. 463, 39 Stat. 756, Sec. 13(c).

13. *See, e. g.,* In re Heller, Hirsh & Co., 258 F. 208 (2d Cir. 1919).

14. Treasury Regulations 86, Art. 52–2, promulgated under the Revenue Act of 1934, broadly construed the statutory term "operating" to provide that, if a receiver had full custody and control over the business and property of the corporation, he was to be deemed to be operating the business within the meaning of the statute. The Regulations have contained substantially the same interpretation since.

15. 28 U.S.C. § 960.

The wording in this section predated the 1954 enactment of section 6012(b)(3) of the Revenue Code, and his remained unchanged to date.[16] The taxpayer seizes upon the words "conducting any business" in section 960, and maintains that these are "substantive" terms which limit liability for any and all tax payments to *operating* trustees. He argues that the change in the law effected by section 6012(b)(3) is merely a "procedural" change regarding filing requirements and, since the limited "substantive" liability set forth by the terms of section 960 has not been altered, a non-operating trustee is not liable for the payment of taxes under that section.

■ This argument is not persuasive. Section 960 of the Judicial Code was not intended to establish or limit substantive income tax liability. Rather, the section was originally designed to avoid what the Commissioner refers to as "importunate litigation" between state taxation authorities and court-appointed guardians of corporate property.[17] The addition of the word "federal" to the statute in 1948 was designed to confirm the liability of court-appointed officers for federal excise taxes, and to negate any implication that the omission of a reference to federal taxes in the pre-1948 statute was intended to confer an immunity from federal taxation. Moreover, we hardly think it likely that Congress would have sought to establish or limit substantive income tax liability by a provision in the Judicial Code. The sheer extent and intricacy of the Revenue Code evinces Congress' attempt to provide therein a comprehensive plan of taxation; the wording of a discrete section of the Judicial Code cannot be deemed to have been meant to serve as a primary exposition of the duties and obligations of a trustee *qua* taxpayer.[18]

Any argument that section 960 was adopted to create and define the parameters of a non-operating trustee's income tax liability is laid to rest by the Supreme Court's analysis of Congress' intention in enacting that section. In Palmer v. Webster and Atlas National Bank [19] the Court stated that the purpose of section 960 was to equalize the competitive situations of operating businesses, be they in bankruptcy or not, by affirming the tax liability of those under court supervision. The Supreme Court perceived no design on Congress' part to comment upon, by negative implication, the tax liability of non-operating trustees.

■ To reiterate, we think that a fair reading of the pertinent sections of the Internal Revenue Code renders the non-operating trustee of a bankrupt corporation liable for the payment of taxes on the bankrupt's income, provided the trustee has possession of, or title to, substantially all the bankrupt's property. Since, as the taxpayer concedes, he did satisfy this proviso, he is liable for the payment of taxes on taxable income, if any there be, derived from Knight's property. This conclusion follows directly, if not ineluctably, from the terms of the statutes, their supporting policies, and their practical implementation.

There is, unfortunately, a dearth of prior judicial decisions concerning the question in issue. The Ninth Circuit, in United States v. Sampsell,[20] expressed the same view regarding sections 6012(b)(3), 6151, and 960 that we adopt here. However, consideration of the precise point contested in this case was not essential to the decision in *Sampsell*, thus perhaps rendering the Ninth Cir-

---

16. Prior to 1948, section 960 made reference only to state and local taxes. In 1948, the reference to federal taxes was added.

17. See 3A Collier, Bankruptcy § 62.14, p. 1523–26.

18. *See* Brown v. Collector of Taxes for District of Columbia, 101 U.S.App.D.C. 200, 247 F.2d 786, 788 n. 9 (1957).

19. 312 U.S. 156, 163, 61 S.Ct. 542, 85 L.Ed. 642 (1941).

20. 266 F.2d 631 (9th Cir. 1959).

cuit's exposition a dictum.[21] The Supreme Court has avoided deciding the question.[22] A conclusion contrary to ours was reached by a referee in bankruptcy in In re Statmaster Corp.[23] The referee relied on reasoning substantially similar to that advanced by the trustee here, but, for the reasons we have stated in analyzing the trustee's arguments, we decline to follow the view announced by the referee in *Statmaster*.[24]

At oral argument, the taxpayer pointed out that requiring the trustee to pay a tax on income produced by the bankrupt's estate depletes the assets available for distribution to creditors. Exempting the trustee from such tax would, according to the taxpayer, serve to further one of the primary objectives of the Bankruptcy Act, that of compensating creditors as fully as possible from the assets of bankrupt estates.[25] If some believe they detect an inconsistency between the mandate of the Internal Revenue Code and a policy consideration ar-

guably reflected in the Bankruptcy Act, Congress, not the courts, appears the proper forum to effect a reconciliation.[26] However great the temptation, it is hardly our province to expand or contract the terms of a taxing statute to comport with what may seem to some to be salutary policy principles, absent a clearer statutory expression of such principles than that offered by the taxpayer in this case. Where Congress has intended to exempt a particular class of persons from the obligation to pay income taxes, it has done so explicitly in the Code.[27] Encountering no such exemption covering trustees in bankruptcy, there is no viable alternative but to hold the trustee here liable for the payment of taxes on the bankrupt's income for the years in question.

Accordingly, the judgment of the district court will be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

21. In *Sampsell*, the trustee was held to be, in effect, an operating trustee.

22. *See* Nicholas v. United States, 384 U.S. 678, 694 n. 28, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966).

23. 332 F.Supp. 1248 (S.D.Fla.1971), aff'd 465 F.2d 978 (5th Cir. 1972). The district court reversed the referee on jurisdictional grounds, not on the basis of the question in issue here. In so doing, the district court stated: "The Court does * * * take note of the troublesome problems in the administration of bankruptcy which are raised and discussed in the Referee's thoughtful opinion. While the temptation to do otherwise is surely great, the resolution of these problems must be left to Congress."

24. The district court, in the present case, in a thorough opinion, agreed with the analysis of the referee in *Statmaster*.

25. The referee in *Statmaster* listed two additional policy considerations supporting the exemption of the trustee from income taxation. First, "there are many small estates in which deposits at interest may be de-

terred if the trustees are subjected to the burden of filing returns and trying to determine what deductions may be authorized. . . ." 332 F.Supp. at 1259. Second, the trustee may well be forced to sign and certify a tax return without personal knowledge of the facts, and to secure appropriate bookkeeping and accounting assistance despite meager funds to do so. "A failure to perform this duty if it is required could result in personal liability for the trustee," and possible civil and criminal penalties exist. *Id.*

26. *Cf.* Nicholas v. United States, *supra*, 384 U.S. at 690, 86 S.Ct. 1674.

27. For instance, an insolvent bank is exempted by section 7507 of the Code, 26 U.S.C. § 7507. See also, 26 U.S.C. §§ 501–521, 6033. It is generally recognized that exemptions from taxation, being matters of legislative grace, must be narrowly construed. *See* Commissioner v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).