RAM FORGE & STEEL, INC., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. H–78–1876.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 16, 1981.

Edward D. Urquhart, Sponsel & Urquhart, Houston, Tex., for plaintiff.

Johnny Mixen, Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## ORDER

McDONALD, District Judge.

### Introduction

Plaintiff, a Texas corporation, seeks to recover $20,518.77 in penalties and interest which it paid the Internal Revenue Service pursuant to Section 6655(a) of the Internal Revenue Code of 1954 (26 U.S.C.) for failure to pay estimated corporate taxes for its fiscal year ending September 30, 1975. A

timely claim for refund of the penalty was filed on September 15, 1976 and disallowed by the I.R.S. on September 29, 1976. The Court has jurisdiction of the case pursuant to 28 U.S.C. § 1346(a)(1).

Defendant moved for summary judgment on September 5, 1980 on the ground that Section 6655 requires payment of estimated taxes with three exceptions, none of which plaintiff met. Plaintiff, in response, argued that defendant was equitably estopped from refusing to return the refund. The Court denied the motion on October 27, 1980, finding that a material issue of fact existed as to whether the doctrine of equitable estoppel should be applied to the facts of the case. Defendant moved for summary judgment again on November 11, 1980 on the ground that the agreed joint pre-trial order, especially the admissions of fact contained therein, and depositions established that there was no genuine issue of material fact and defendant was entitled to judgment as a matter of law, and requested oral argument. The Court denied the motion for summary judgment on February 23, 1981 but ordered an oral hearing on the applicability of equitable estoppel to the facts of the case.

On September 18, 1981, in reconsideration of defendant's Motion for Summary Judgment, the Court heard testimony and oral argument on the question of the applicability of equitable estoppel to the facts of the case.

### The Facts

The parties have stipulated to the following facts: In 1974 the defendant Internal Revenue Service conducted an audit examination of plaintiff's returns for fiscal years 1970, 1971, 1972, 1973, and 1974 and also undertook a criminal investigation for those years. In June of 1974, as part of the examination I.R.S. agents took possession of books and records, including purchase invoices, sales invoices, bank statements, cancelled checks, deposit slips, cash receipt and disbursement journal, general ledger, accounts receivable ledger, accounts payable ledger, insurance policies and payroll and other documents. The records covered fiscal years ending in 1970, 1971, 1972, 1973 and part of 1974. Plaintiff did not have copies of these records. They retained the books and records for approximately one year until June 1975.

Plaintiff's corporate income tax return for fiscal year ending September 1974 was due on December 15, 1974. Defendant granted plaintiff two extensions for filing it. The first was an automatic extension to March 15, 1975. The second, for an additional three months to June 15, 1975 was granted on the ground that "Books and Records in Hands of Internal Revenue Service for Audit—No Figures Available."

The plaintiff's reported taxable corporate income for the recent years was as follows: in 1971, $29,091; in 1972, $35,892; in 1973, $50,450; in 1974, $293,242; and in 1975, $1,147,399. Plaintiff's President, Spurgeon McDougal, and its comptroller, James Evans, acknowledged knowing during 1975 that they were having a "good year." (Evans Deposition, p. 17; McDougal Deposition, p. 20) Evans admitted he could make a reasonable estimate of profit for the corporation on the basis of known gross receipts. (Evans Deposition, p. 23) Evans also acknowledged that plaintiff possessed invoices which established up to date gross receipts for the year in suit. (Evans Deposition, p. 10)

Plaintiff contends[1] that the Internal Revenue Service agent to whom it delivered its books and records represented to plaintiff that he would keep the records for two or three weeks at the most. When three weeks had passed plaintiff's comptroller requested return of the materials. They were not returned, and during 1975 the plaintiff's president also requested return of the materials.

---

1. For the purposes of the Motion for Summary Judgment defendant did not dispute plaintiff's factual allegations.

### The Law

The parties have agreed that the case is governed by the following propositions of law.

1. Section 6154 of the Internal Revenue Code of 1954, as it existed during the period in issue in this suit, required a corporation to make installment payments of estimated tax on a specific schedule if its "estimated tax" for the year could reasonably be expected to be $40.00 or more.

2. "Estimated tax" was defined for the period in issue by Section 6154 of the Internal Revenue Code of 1954, in essence, as the amount of corporate income tax which the corporation expects to owe for the taxable year, less certain credits not relevant here, and less its "temporary estimated tax exemption" for the year. The "temporary estimated tax exemption" for the period in issue as pertains to plaintiff was $2,200.00.

3. Section 6655 of the Internal Revenue Code of 1954 provides a penalty for the failure of a corporation to pay its estimated tax. The penalty was applied to the "amount of underpayment" for the "period of underpayment." As it pertains to this action, the "amount of underpayment" would be 80 percent of the tax shown on the plaintiff's income tax return for its fiscal year ending September 30, 1975.

4. As the term "period of underpayment" pertains to this action, there were four installment payment dates on which estimated tax payments would be due from plaintiff: January 15, 1975; March 15, 1975; June 15, 1975; and September 15, 1975. The "periods of underpayment" would be from each of those dates until December 15, 1975, and the penalty would be computed on the amount of each installment required to be paid but not paid on each such date.

5. There are three statutory exceptions to the penalty provided by Section 6655. The only exception which plaintiff contends is relevant here is that no penalty will be assessed if the corporation has made estimated tax payments (on or before the last installment due date) which equal or exceed the tax shown on the corporation's return for the preceding taxable year.

6. "Reasonable cause" is not a basis for relief from the penalty provided by Section 6655 of the Internal Revenue Code of 1954.

### Oral Testimony

Plaintiff has argued that estoppel bars the defendant from collecting a penalty because defendant's possession of plaintiff's books and records prevented plaintiff from making estimated tax payments for the fiscal year ending September 30, 1975. Thus, the questions before the court were whether at any time prior to August 31, 1975 plaintiff was able to determine its tax liability for its fiscal year ending September 30, 1975 could reasonably be expected to equal or exceed $2,240; and if it could not, whether this inability was caused by the actions of the Internal Revenue Service.

In support of its equitable estoppel argument, plaintiff offered testimony of its comptroller, James Evans, and Jonathan Chase McEvoy, Jr., its present accountant. Mr. Evans testified that given plaintiff's method of accounting, plaintiff could not determine net profits without the prior years' ending inventory figures as a starting point to calculate the cost of goods sold. He noted that plaintiff's accounts receivable fluctuate year to year because it is a specialty business.

In response to questions from the court, however, Mr. Evans testified that had a fire destroyed the plaintiff's records he could, nevertheless, reconstruct them: he explained that he could get copies of checks from the bank, determine the September 1973 balance, and reconstruct the 1974 figures. The task would take about six months in addition to his regular duties. He stated that plaintiff had sales information and therefore, although not precisely accurate because of the lack of ending figures for prior years, plaintiff had a basic idea of what it was doing every month. In response to another question by the Court, Mr. Evans testified that in early 1975 the I.R.S. sent plaintiff a photocopy of its general ledger, that several pages were missing

and it took a week to straighten out, but that in April or May plaintiff resumed monthly posting of checks to the ledger.

Plaintiff's present accountant, Mr. McEvoy, described plaintiff's accounts as a hand posted, double-entry general ledger system with a physical as opposed to perpetual inventory, and a job cost system. He stated that in general the key ingredient in plaintiff's accounting was the beginning balance. Mr. McEvoy testified that the plaintiff corporation was undergoing dramatic growth and expansion in fiscal year 1975 and that it could not assume a certain percentage of profits to sales, because a large job could result in a low profit. Mr. McEvoy was not plaintiff's accountant at the time in question and therefore has no personal knowledge of plaintiff's accounts in fiscal year 1975, but he stated his opinion that plaintiff could not, in a professional manner, have estimated net profits or taxable income, without the books and records claimed by the I.R.S. He also testified that he believed plaintiff did not have adequate cash to pay both its outstanding 1974 taxes and its estimated taxes for 1975 during that period.

Plaintiff did not offer any evidence to show that it attempted to notify the Internal Revenue Service of its inability to make estimated tax payments for its fiscal year 1975, and its comptroller admitted that no Internal Revenue Service agent ever told plaintiff that it was not obligated to pay estimated taxes for its fiscal year 1975.

On the basis of the facts, including the testimony offered at the hearing, and the relevant law, the Court concludes that defendant is entitled to summary judgment.

■ Plaintiff did not show that it was prevented by defendant's retention of its records from filing estimated taxes. Even without its books and records, plaintiff knew that it was doing well and therefore must have known its tax liability would exceed $2,240. It had a copy of its general ledger by May 1975 and was able to file its 1974 tax return in complete detail in June 1975.

In June plaintiff had all of its books and records and therefore, at that point at which it learned of its requirement to pay estimated taxes it should have paid 100 percent of its estimated taxes in that last quarter.[2] It might also have avoided the penalty by paying 80 per cent of its 1974 tax liability, in the last quarter. Plaintiff, however, made absolutely no estimated tax payments in fiscal 1975.

■ The misrepresentation which plaintiff alleges defendant made related to the return of plaintiff's books. Defendant did not represent that plaintiff was not required to pay estimated taxes in fiscal 1975. There is no causal relationship between the I.R.S. agent's representation that he would return plaintiff's materials within a few weeks and plaintiff's nonpayment of estimated taxes.

The Court appreciates the fact that income as a flow is not captured in the debits and credits of a balance sheet or ledger, and that the prior years' records were important to plaintiff to determine the costs of goods sold. It understands, therefore, the difficulties plaintiff might have had in determining its tax liability in its fiscal year 1975. Certainly, the defendant Internal Revenue Agent's actions in this case in keeping plaintiff's records for an entire year, especially after indicating that they would be returned in a matter of weeks, do not seem reasonable. But, the government's unreasonableness does not make the plaintiff's failure to file estimated taxes reasonable. Moreover, the parties agree that "reasonable cause" is not a basis for relief from the penalty provided by Section 6655. It seems likely that plaintiff's failure to pay estimated taxes for fiscal year 1975

**2.** 26 U.S.C. § 6154(a) requires a corporation to make payments of estimated tax if such tax, less its temporary estimated tax exemption, "can reasonably be expected to be forty dollars or more." Section 6154(b) provides that if the requirements of § 6154(a) are first met after the last day of the eighth month and before the first day of the twelfth month of the taxable year, the taxpayer must pay 100 percent of its estimated tax on the fifteenth day of the twelfth month.

was the result of a cash flow problem stemming from rapid growth and expansion. The statutes governing estimated tax, however, do not accommodate such cash flow problems.

For the reasons stated above, on reconsideration of defendant's Motion for Summary Judgment, the Motion is hereby GRANTED.