**In re SAPPHIRE STEAMSHIP, Debtor.**

**Reorganization No. 67 B 252.**

United States Bankruptcy Court,
S.D. New York.

March 9, 1984.

Winthrop, Stimson, Putman & Roberts, New York City, for trustee; Robert Anthoine and Rebecca S. Rudnick, New York City, of counsel.

Rudolph Giuliani, U.S. Atty., New York City by Alan Nisselson, Asst. U.S. Atty., for debtor.

BURTON R. LIFLAND, Bankruptcy Judge.

In this multiyear, dormant, bankruptcy liquidation case where assets have swollen

due to accumulating interest punctuated only by a partial dividend distribution, the tax gatherer seeks the imposition of penalties for nonpayment of estimated taxes by an otherwise dutiful taxpayer-trustee. The tax gatherer seeks total enjoyment from the trustee's economic discomfiture: a) as a receiver of a 100% recovery for prepetition obligations of the bankrupt; and b) as a current collecting participant in the ongoing accumulation of interest income of the estate on a quarterly basis. The trustee, seeking the highest rate of return, believes he need only settle accounts with the Internal Revenue Service ("IRS") annually. The IRS believes that it is entitled to a quarterly reckoning and has emphasized its position by attempting to assess penalties considered most foul by the trustee. In resolving whether payments must be made annually or quarterly, questions of statutory construction of the Internal Revenue Code and its interrelationship with the policies contained within the bankruptcy laws are presented.

Sapphire Steamship Lines, Inc. filed a voluntary petition in bankruptcy in 1967. The trustee of this estate, one J. Read Smith ("the trustee"), is a "nonoperating" trustee of the bankrupt corporation. From on or before 1970, the sole functions of the trustee have been to administer the estate's liquid assets pending the resolution of certain claims for ultimate distribution to creditors and to discharge his duties under the Bankruptcy Act. From 1974 to the present, the sole source of income to the estate has been passive income that has accrued from interest on the property and proceeds from the settlement of antitrust suits.

The trustee has timely filed and paid annual federal income taxes on behalf of the estate pursuant to Section 6012(b)(3)[1] of the Internal Revenue Code of 1954 ("the Code"). The trustee, however, has not made quarterly estimated tax payments as required by "corporations" pursuant to Section 6154 of the Code. The IRS has assessed the estate for penalties or interest in the amount of $67,735.93 for failure to pay these quarterly estimated taxes. After issuing notices to the trustee requesting penalties for failure to make estimated tax payments in January 1979 and in June 1982, the IRS filed with the Court a Request for Payment of Internal Revenue Taxes for accrued penalties and interest with respect to corporate income taxes for the taxable years ending in 1975, 1976, 1978, 1979, 1981, and 1982. The trustee thereupon on September 16, 1983 submitted the instant application for an order fixing and determining the amount of tax, if any, interest or penalties owed by the trustee and the estate as a result of the trustee's failure to pay estimated tax and for an order barring the IRS from further assessing any penalties or interest.

The narrow issue before the Court is whether the trustee of this corporation which has been adjudicated a bankrupt under the Bankruptcy Act of 1898 should properly be subjected to the collection mechanism of installment tax payments which are applied to "corporations" by Code Section 6154.[2]

1. Section 6012 of the Internal Revenue Code provides in pertinent part:
   (a) GENERAL RULE—Returns with respect to income taxes under subtitle A shall be made by the following:

   . . . . .
   (2) Every corporation subject to taxation under subtitle A;
   (b) RETURNS MADE BY FIDUCIARIES AND RECEIVERS—

   . . . . .
   (3) RECEIVERS, TRUSTEES AND ASSIGNEES FOR CORPORATIONS—In a case where a receiver, trustee in a case under title 11 of the United States Code or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns. I.R.C. § 6012 (West.Supp.1983).

2. Section 6154 provides in pertinent part:
   § 6154. Installment payments of estimated income tax by corporations
   (a) Corporations required to pay estimated income tax.—Every corporation subject to tax-

The trustee has conceded and fulfilled its obligation to pay federal income taxes as provided by Section 6012 of the Code. Section 6012(b)(3) of the Code specifically provides that a trustee has a duty to pay taxes on behalf of an estate based on the annual return of income. The statute prescribes in pertinent part that the trustee who

> has possession of or holds the title to all or substantially all of the property or business of a corporation, whether or not such property or business is being operated, ... make the return of income for such corporation in the same manner and form as corporations are required to make such returns.
>
> Internal Revenue Code Section 6012(b)(3) (West Supp.) (1982).

In addition, case law clearly establishes that a nonoperating trustee is liable for the payment of federal income tax. *See In re I.J. Knight Realty Corp.*, 501 F.2d 62, 66 (3d Cir.1974); *In re Nab Food Services, Inc.*, 25 B.R. 221, 223 (Bkrtcy.S.D.Ohio 1982); *In re Knight's Mill, Inc.*, 24 B.R. 143, 146, 7 C.B.C.2d 655, 658 (Bkrtcy.E.D. Mich.1982).

This application, however, addresses the more novel question of whether the trustee has a similar obligation with respect to payment of quarterly estimated taxes governed by Section 6154.[3] Given the various rules of statutory construction applied to the taxing statutes, as well as the relevant legislative history, this Court declines to impose the obligation to pay an estimated tax upon the nonoperating trustee of this estate.

### I. *Rules Governing Construction of Taxing Statutes*

Internal Revenue Code Section 6012 specifically imposes a duty to file federal income tax returns upon, *inter alia*, bankrupt corporations in its subsection (b)(3).

In contrast, Section 6154, which deals with estimated tax payments, contains no subsection specifying a trustee's obligation to pay an estimated tax for a bankrupt corporation. Several cases have addressed the problem of interpreting omissions of this kind in tax statutes, and this Court believes that Section 6154 should not be construed to include bankrupt corporations within its purview.

It is "the well known rule of construction that in case of doubt, a taxing statute must be construed most strongly in favor of the taxpayer and against the government." *Greyhound Corporation v. United States*, 495 F.2d 863, 869 (9th Cir.1974); *Frankel v. United States*, 192 F.Supp. 776, 777 (D.Minn.1961) *aff'd*, 302 F.2d 666 (8th Cir. 1962), *cert. denied* 371 U.S. 903, 83 S.Ct. 208, 9 L.Ed.2d 165 (1962). *See also Gould v. Gould*, 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211 (1917). In the instant case, the propriety of inferentially applying Section 6154 is less than clear. Thus, case law counsels a narrow construction. As the court in *Greyhound Corporation* stated: "Tax statutes are not to be extended by implication beyond the clear import of the language used and, in case of doubt, are construed most strongly against the government." 495 F.2d at 869.

Congress, in addressing the status of a bankrupt corporation with regard to the filing of tax returns in Section 6012(b)(3) specifically carved out a subsection mandating such filing. However, it adopted no such subsection to clarify Section 6154 regarding the bankrupt's duty to pay estimated taxes. As the Court in *Frankel, supra*, stated: "Congress could very easily have manifested any other intent by a limiting or qualifying provision." *Frankel*, 192 F.Supp. at 777–78. Accordingly, this Court finds that it cannot include bankrupt corpo-

---

ation under section 11 or 1201(a), or subchapter L of chapter 1 (relating to insurance companies), shall make payments of estimated tax (as defined in subsection (c)) during its taxable year as provided in subsection (b) if its estimated tax for such taxable year can reasonably be expected to be $40 or more.
I.R.C. § 6154 (West Supp.1983).

**3.** The second issue briefed by the parties of whether the IRS may properly maintain an administrative claim for withholding and FICA taxes appears to have been rendered moot as counsel for the IRS advised the Court at the hearing held on this matter that the IRS had amended such claim to eliminate the amount of tax alleged for FICA and withholding.

rations within the purview of Section 6154 where Congress has elected not to do so. As one court declared: "Taxes should be imposed by Congress, and not by the courts. If there is serious doubt as to taxability, as in this case, the doubt should be resolved in favor of the taxpayer." *Ellis v. United States*, 416 F.2d 894, 897 (6th Cir.1969).

The Internal Revenue Code must be read as a comprehensive whole. As one court declared: "All the sections of the Code must be read together to avoid conflict and achieve a harmonious, rational result." *Southern National Gas Co. v. United States*, 412 F.2d 1222, 1266, 188 Ct.Cl. 302 (1969). And, in reiterating this principle, the court in *In re Samoset Associates*, 14 B.R. 408, 411 (Bkrtcy.D.Me.1981), in construing Sections 6012 and 641 of the Code, reasoned that the tax liability of a bankrupt corporation can only be determined by reading the applicable section "*in pari materia* with related sections ... with a view to achieving a consistent and harmonious construction". *Id.* (citations omitted). *See also Commissioner v. Stickney*, 399 F.2d 828, 834 (6th Cir.1968). The court in *Samoset* then declared that pairing this rule of *in pari materia* construction with the maxim that "tax legislation is not to be extended by implication beyond the plain purport of the statutory language ... compels the conclusion that whatever doubt and ambiguity remain ... must be resolved in favor of the taxpayer." *Samoset*, 14 B.R. at 411.

Moreover, as the United States Supreme Court has declared: "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 52 S.Ct. 322, 323, 76 L.Ed. 704 (1932) (citing *United States v. Chase*, 135 U.S. 255, 260, 10 S.Ct. 756, 757, 34 L.Ed. 117 (1890)). This Court thus may not fairly read the phrase "bankrupt corporation" into the language of Section 6154 where that status has been separately and specifically addressed by Section 6012.

The Board of Tax Appeals implemented these same rules of statutory construction in *International-Great Northern Railroad Co. v. Commissioner*, 24 B.T.A. 726 (1931). In declaring that the trustee of a bankrupt corporation is not liable for excess profit taxes under the Revenue Act of 1818, the court in *Great Northern* grappled with the distinction between a corporation and a bankrupt entity. The court, relying upon the United States Supreme Court's decision involving an excess profits tax under the Revenue Act of 1916 in *Reinecke v. Gardner*, 277 U.S. 239, 48 S.Ct. 472, 72 L.Ed. 866 (1928), found that the income of the trustee of a bankrupt corporation is not that of the underlying corporation. The Court in *Great Northern* also cited *Reinecke*'s articulation of the proposition that "[t]he extension of a tax by implication is not favored." 24 B.T.A. at 745. (quoting *Reinecke v. Gardner*, 277 U.S. at 244, 48 S.Ct. at 474). The Tax Court in *Great Northern* held that the statutory clause "every corporation" was not meant to include a receiver. The Tax Court thus declared:

> If Congress had intended to impose the excess-profits tax upon others than corporations, it would have done so by stating the *specific taxable entities* upon which the excess-profits tax should fall. It is a cardinal principle in the interpretation of taxing statutes that their language shall not be extended to include objects not clearly embraced therein

24 B.T.A. at 745–46 (emphasis added).

It thus ill behoves this Court to employ more expansive means of statutory construction when construing two sections of the Internal Revenue Code. The estimated tax requirement of Section 6154(a) applies to "[e]very corporation subject to taxation under section 11 ..." No specific reference is made to the trustee of a bankrupt corporation in section 11 of the Code, and the present discussion cautions against inclusion of what has not been specifically stated.

This narrow construction of Section 6154 finds further support in the penalty prescribed under Section 6655 for failure to pay estimated taxes. Section 6655 appears not to apply to the trustee of a bankrupt corporation. Tax Regulation § 1.6655–2(b)(3) provides:

> For the purpose of the exceptions described in paragraphs (a)(1) and (2) of this section, the term "return for the preceding taxable year" means the income tax return for such year *which is required by Section 6012(a)(2)."*
>
> Tax Regulation § 1.6655–2(b)(3) (1983) (emphasis added).

This Regulation thus refers in no way to Section 6012(b)(3), which governs the filing of returns by bankrupt corporations. Rather, the regulation expressly imposes a penalty only on the Section 6012(a)(2) corporation for failure to make these installment payments. Indeed, the rationale for limiting the scope of Regulation 1.6655–2(b)(3) to operating companies of assuring competition among operating companies was expressed on the Senate floor by Senator Smathers of Florida during debate regarding the passage of the 1968 tax bill:

> Corporations compete with unincorporated businesses and it would provide corporations with a competitive advantage if they were allowed to defer tax payments that their competitors had to make currently. 114 Cong.Rec. 7531 (1968).

The very laudable goal of Section 6154 of reducing the differences in tax treatment of similarly situated businesses would in no way be furthered by applying this provision to the trustee. The only competition now engaged in by the trustee is against time itself in order to avoid an even more prolonged stay in bankruptcy court. *See* footnote 4 *infra.*

## II. *Other Relevant Legislative History of the Taxing Statutes At Issue*

The pertinent legislative history provides further insight toward a fair and equitable construction of the statutes at issue. "In determining the purpose and coverage of a taxing statute of doubtful meaning, a court should turn to the legislative history to determine the Congressional intent." *Greyhound Corporation v. United States,* 495 F.2d at 868.

In addition to the above quoted statement of Senator Smathers, other legislative history of the estimated tax provision indicates that it was not intended to apply to a nonoperating trustee in bankruptcy. Rather Congress imposed the requirement of quarterly payments so as to improve the efficiency of the collection mechanism of revenues from ongoing business entities. The Senate Report provides in pertinent part:

> The present 2-installment system lumps substantially all tax payments of calendar-year corporations within the 90-day period between March 15 and June 15. Since corporate taxes account for almost 30 percent of the Government's total receipts, the lumping of the flow of corporate-tax payments to the Treasury aggravates the effect of Treasury operations on the money markets. It increases the problems of managing the public debt and makes it more difficult for corporations to manage their own financing. Moreover, many large corporations in effect make advance payments of their income taxes by the purchase of short-term Government securities. Although this funding of tax payments serves to make funds available to the Government, it involves additional interest payments by the Government and increases the problems of managing the short-term debt.
>
> To remedy this situation, the House and your committee's bill provide a system of declarations of estimated tax from the larger corporations which restores the four quarterly installment system and reduces the time the corporation is given for the payment of its tax. *This is accomplished in a way which will afford the business community ample opportunity to adjust to the new system and will work no hardship on seasonal businesses or businesses with limited liquid funds.* S.Rep. on H.R. 8300, 83rd Cong., 2nd Sess., *reprinted in 1954* U.S.Code

Cong. & Ad.News, 4025, 4621, 4771 (emphasis added)

In contrast to the type of entity Congress aimed at in promulgation of the estimated tax section, a nonoperating trustee of a bankrupt corporation is in no way managing a competitive enterprise and poses no threat to small businesses.[4] The quarterly system was not implemented to capture the nonoperating trustee in the estimated tax net. Furthermore, beginning in 1968 the requirement of a declaration of estimated tax by all corporations was repealed. Payments now are due only from "every corporation subject to taxation under section 11...." I.R.C. § 6154 (West. Supp.1983) A bankrupt corporation is not subject to taxation under this section.

The IRS attempts to bolster its theory of entitlement to quarterly payments, alleging that Section 960 of the Judiciary and Judicial Procedure of the United States Code requires the trustee to pay estimated taxes. That section provides: "Any officers and agents *conducting any business* under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." 28 U.S.C. § 960 (West Supp.1983) (emphasis added). However, case law clearly belies any interrelationship between Section 960 and the relevant sections of the tax code, thus placing no obligation on a nonoperating trustee to pay an estimated tax. The court in *United States v. Sampsell*, 266 F.2d 631, 635 (9th Cir. 1959), posited that "[i]t is not likely that Congress, in passing the 1954 IRC, would make the income tax liability dependent on a part of the Judiciary and Judicial Procedure Code." *Accord, In re I.J. Knight Realty Corp.*, 501 F.2d at 66. *See also Palmer v. Webster & Atlas National Bank of Boston*, 312 U.S. 156, 163, 61 S.Ct. 542, 545, 85 L.Ed. 642 (1941).

Moreover, the case at bar concerns only the liability of a nonoperating trustee, whereas Section 960 plainly refers to income generated as a result of "conducting any business." *See In re Samoset Associates*, 14 B.R. 408, 413–14. Judge Cyr in *Samoset Associates* counsels against applying Section 960 in cases involving nonoperating trustees, declaring: "No court has held a true liquidating trustee subject to federal income taxation under 28 U.S.C. § 960". *Id.* at 414. The court then continued, stating: "Conserving the assets of the estate pending their distribution does not constitute 'conducting any business'" *Id.* (citations omitted). Section 960 thus applies solely to operating trustees and not with regard to nonoperating trustees. *See In re F.P. Newport, Corp., Ltd.*, 144 F.Supp. 507, 509 (S.D.Cal.1956). The passive income earned from interest on cash deposited by the trustee "cannot be considered the fruits of an ongoing operation...." *Samoset Associates*, 14 B.R. at 414.

Accordingly, policy considerations urge us to employ a narrow interpretive analysis in addressing this question. We do this "to avoid an unintended change in the substantive law." *In re Statmaster Corporation*, 332 F.Supp. 1248, 1261 (S.D.Fla.1971), *aff'd*, 465 F.2d 978 (5th Cir.1972). This narrow analysis is appropriate to avoid a head-on collision between and thereby reconcile the purposes of the tax and bankruptcy statutes. *Id.* In the instant case, the trustee has timely paid all annual federal income taxes as they have become due. It would be an unfair and unrequired imposition on and disruption to estate administration to require the additional burden of estimated tax payments. These payments would interfere with the flexibility needed by a trustee to earn the highest rate of uninterrupted income pending the resolution of these bankruptcy proceedings.

---

**4.** The activities of a nonoperating trustee are limited to "collecting accounts receivable, paying debts, prosecuting and defending court actions, placing liquid assets in interest-bearing deposits or obligations", and similar duties called for once all business operations of the debtor have ceased. *See In re Samoset Associates*, 14 B.R. at 414 (citing *In re New York, New Haven and Hartford R.R. Co.*, 360 F.Supp. 1155, 1158 (D.Conn.1973)). *See also In re Owl Drug Co.*, 21 F.Supp. 907, 911 (D.Nev.1937).

Moreover, enforcing Section 6154 in these circumstances undoubtedly inures to the detriment of the estate as a whole in reducing the size of the pool of distributable assets available to all creditors. Indeed, had these payments been made quarterly, it is quite likely that interest on the estate monies undoubtedly invested in certificates of deposit or another kind of long-term account would have been lost. In this regard, commentators have noted the negative impact of payments of estimated taxes on cash flow. *See, e.g.,* Corporate Estimate Tax Payments: How to Minimize Their Adverse Effect on Cash Flow, 7 Taxation for Accountants 154 (1971).

Therefore, because the penalties for failure to pay estimated tax are automatically imposed without a balancing of the equities relating to cash flow, these penalties are ill-suited to the policies and method of administering the estate of a bankrupt corporation. As the court in *Ram Forge & Steel, Inc. v. United States,* 527 F.Supp. 110, 113–14 (S.D.Tex.1981), stated in upholding such penalties:

> It seems likely that plaintiff's failure to pay estimated taxes for fiscal 1975 was the result of a cash flow problem stemming from rapid growth and expansion. *The statutes governing estimated tax, however, do not accomodate such cash flow problems.*

*Id.* (emphasis added).

III. *Conclusion*

An expansive reading of Section 6154 would conflict with the plain language as well as the legislative history conveying the underlying intentions of the drafters of the Internal Revenue Code. By maintaining the status quo, the trustee will be able efficiently to manage the trustee's estate and to abide by its true obligation to pay federal income taxes annually. Accordingly, the trustee has no tax liability for estimated taxes throughout the years claimed and the trustee's request for an order barring the IRS from assessing any further

penalties or interest for the nonpayment of estimated taxes is granted.

It is SO ORDERED.