<hr/>

## In re WYATT.

District Court, E. D. Virginia. November 29, 1927.

### No. 4789.

1. Bankruptcy ⊜⇒6—Amendment of statute held not applicable to pending petition for discharge (Bankr. Act, § 14b[2] as amended by Act May 27, 1926, § 6 [11 USCA § 32]).

Bankruptcy Act, § 14b(2) as amended by Act June 25, 1910, § 6 (11 USCA § 32), made destruction, concealment, or failure by bankrupt to keep books ground for refusing discharge, where it was "with intent to conceal his financial condition." By amendment of May 27, 1926, § 6 (11 USCA § 32), such condition was eliminated. *Held*, that amendment was not retroactive and was not applicable to case where petition for discharge was pending when the amendment became effective.

2. Bankruptcy ⊜⇒414(3)—Refusal of discharge for destruction of records or concealment of assets held not warranted by evidence.

Evidence *held* not to warrant refusal of discharge on ground of destruction of records or concealment of assets.

In Bankruptcy. In the matter of William H. Wyatt, Jr., bankrupt. On petition for discharge and objections thereto. Discharge granted.

John Howard, of Richmond, Va., for the bankrupt.

Andrew D. Christian and Ralph T. Catterall, both of Richmond, Va., for the creditors.

GRONER, District Judge. I have carefully examined the evidence taken on the specifications of opposition to the discharge of the bankrupt, and I have also considered carefully the report of the referee, and as a result I find myself unable to concur with the views of the referee that the bankrupt ought to be denied a discharge.

I have always felt, of course, that a discharge ought not to be granted in bankruptcy if there was any valid legal reason shown to the contrary, and therefore in this case, as in

a number of other cases, I was liberal in allowing additional specifications to be filed at any time up to the actual time for passing upon the application for discharge.

[1] In this case the principal objections to the discharge were not available to the protesting creditors on the return day of the order to show cause why the discharge should not be granted for the reason that the protestants desired to have the advantage of certain clauses of the Amendment of May 27, 1926 (44 Stat. 662), effective August 27, 1926, and since the effective date of the amendment had not been reached when the specifications should have been filed, it was only by allowing them to be filed subsequently that their applicability could be determined. I have very serious doubts whether the specifications based upon the amendatory act may be considered, since, as I have said, their provisions were not effective until after the time allowed by the act for filing objections had then expired, but I have resolved this question otherwise, and have considered the grounds of opposition to the discharge as though the same had been filed in accordance with the precise terms of the act, but even under these circumstances I have reached the conclusion that the particular amendment urged against the granting of the discharge is not applicable in the circumstances as they exist here. The amendment (44 Stat. 663, § 6 [11 USCA 32]) strikes from the former act (36 Stat. 839, § 6 [11 USCA 32]) a provision in subdivision 2 of section 14(b) by the elimination of the requirement that the destruction of, concealment of, or failure to keep books shall be a bar to discharge *only where such destruction or concealment or failure is "with intent to conceal his financial condition,"* and the substitution in place thereof of a provision whereby a mere destruction, mutilation, falsification, concealment, or failure shall be sufficient, "unless the court deem such failure or acts to have been justified, under all the circumstances of the case," and section 18 of the amendatory act provides that the amendatory act shall govern "so far as practicable and applicable," but, where not practicable or applicable, the proceeding shall be "conformably to the provisions" of the act before the amendment.

The conclusion I have reached, as I have already indicated, is that this amendment to the act may not be applied to cases then pending when it took effect. The decisions which I have examined are by no means uniform, but the weight of authority seems to me to be in favor of the view I have taken, and the very decided weight of reason is in favor of it. When the bankrupt's application for discharge was filed, he was entitled to his discharge so far as this provision of the act is concerned, unless he had destroyed his books with intent to conceal his financial condition, which is a very different case from the mere destruction of records without such intent. The statute ought not to have a retroactive operation unless by its terms this is clearly imperative. The language used in section 18 is, in my opinion, by no means compelling. See Collier on Bankruptcy (1927 Ed.) p. 334; Black on Bankruptcy, 668; In re Hammerstein (C. C. A.) 189 F. 37, and cases cited.

[2] Considering the case, therefore, as under the provisions of the act prior to the amendment, I have not been able to find in the evidence anything which would justify me in saying that the destruction by the bankrupt of his canceled checks and his failure to keep regular books of account was with intent to conceal his financial condition. While I think it is correct to say that the amendment to section 14, shifting the burden of proof to the bankrupt, is valid and applicable thereafter in all cases whether begun before or after its passage, still, when considered from this aspect, I think the bankrupt's explanations are consistent with honest dealing. He was the high constable of Richmond, and had been for many years, and received from the fees of that office a very considerable income, but he was also a politician, subject apparently to the usual demands on one holding political office, and it is not therefore unbelievable that he should have consumed his income in personal living expenses and the payment of what in common knowledge may be said to be his political obligations, unfortunate as this may be. In addition, he unquestionably lost a considerable sum of money in a furniture business and contributed a considerable sum of money to the maintenance of an unsuccessful son. I think it is also likely that his statement that he lost money by defaulting deputies is true, but I do not think it necessarily follows that, because he handled large sums of money which he is unable to explain the use of in detail, he has concealed or illegally transferred part of same in fraud of his creditors. I think it not unreasonable to accept his explanation of his failure to keep books of account as to these transactions because they were all personal in their nature.

For these reasons I am disposed not to follow the referee's recommendation that a

discharge be not granted because of violation by the bankrupt of subsection b(2) of section 14 as amended by the Act of May 27, 1926, nor am I in accord with the referee's view that, because the bankrupt did not schedule sums of money claimed by him to be loaned to various persons who had aided in his campaign, he should be denied a discharge on this account. That he may have made such advances and designated them loans may or may not be true. If true, they were of course made in that form to avoid violation of the election laws, but that they are valid debts which might be collected is of course not true. I cannot be expected to be blind to things which every one knows, and one of these is that a person running for office is unfortunately frequently required or believes himself required to spend large sums of money, and the spending frequently takes the form of loans and gifts to one's political supporters. That this is an offense to our sense of the proprieties as well as an offense against the law unfortunately does not make the practice any less prevalent. It is an unhappy and regrettable incident of popular government, and perhaps will never be remedied until the moral sense of the community is aroused to drive out of public office those who indulge in it, and this event will not occur as long as the best element in every community continue as indifferent to their political obligations as is the case at this time. I have no idea that the bankrupt would have collected any sums of money on this account if he had not become bankrupt, or that he ever expected to receive any part of it back, or that the recipients ever expected to pay it back. The omission, therefore, of the names of these political parasites from his schedules, does not constitute, I think, the making of a false oath, nor do I think it is correct to say that, because the bankrupt believed or knew that several of his deputies had embezzled from him in his capacity as constable, his failure to disclose in his schedules the names of these embezzlers was the making of a false oath. These, like the debts referred to in the preceding paragraphs, were uncollectable, and an effort to prove them or collect them, if I read the evidence correctly, would have been bootless and vain.

The referee is of opinion that the evidence as a whole does not definitely show a failure of the bankrupt to account for his assets, and I concur with him in this respect. It is true there are many suspicious circumstances which demanded investigation, but there has been a most painstaking investigation conducted by the very able counsel. No evidence of any value has been offered to contradict anything said by the bankrupt, and it must be wholly out of his own mouth that his conviction is had, if it is had. That it is shown that he is a man of no very high ethical standards is not enough.

There must be evidence that he has concealed or is concealing his assets from his creditors, and this, after having read the evidence, I am not able to say is true; hence I must grant him his discharge.