In re MID AMERICA CO.

In re NATIONAL UNION LOAN SOC., Inc.

In re NATIONAL UNION THRIFT SOC.,
Inc.

No. 7213.

District Court, S. D. Illinois, N. D.

Dec. 12, 1939.

Cyrus Churchill, of Moline, Ill., for trustee.

John E. Cassidy, Atty. Gen., and Joe A. Pearce, Asst. Atty. Gen., for Director of Labor of State of Illinois.

ADAIR, District Judge.

Review is sought of a referee's order disallowing a priority tax claim filed by Martin P. Durkin, Director of Labor of the State of Illinois, for contributions due under the Illinois Unemployment Compensation Act, approved June 30, 1937, Illinois Revised Statutes, (State Bar Association Edition 1937), Chapter 48, Section 217 et seq. The essential facts are as follows:

The National Union Loan Society, a corporation, and its affiliate, the National Union Thrift Society, a corporation (no contributions are due from the latter), were engaged in the business of handling financial paper. Because of business difficulties, a new corporation, the Mid America Company, was organized, and an agreement was entered into on November 18, 1937, between the National Union Loan Society and the Mid America Company, whereby the latter took over the entire business of the former, acquiring all of its

assets and assuming its outstanding liabilities.

All three corporations were subsequently adjudicated bankrupt; the National Union Loan Society on March 8, 1938, the National Union Thrift Society on March 25, 1938, and the Mid America Company on April 1, 1938. Because the affairs of the three bankrupts were intertwined, and the assets intermingled, this court, on April 1, 1938, entered an order consolidating the estates of the bankrupts for administration purposes. All of these proceedings took place prior to the enactment of the Chandler Amendment to the Federal Bankruptcy Act of 1898, as amended, which became law on June 22, 1938, and became effective on September 22, 1938, 11 U.S.C.A. § 1 et seq.

The Director's proof of claim was filed on October 24, 1938, and asserted priority as a tax claim. It is divided into two parts: One is based on wages earned by individuals employed by the National Union Loan Society and its successor, the Mid America Company; the other, on wages earned by individuals engaged by the trustee to perform services for him in connection with the administration of the bankrupt estates.

Upon objections filed by the trustee to the Director's claim, a hearing was held before the referee on January 30, 1939. The only evidence introduced at such hearing was the testimony of the trustee describing the nature of his services and the services performed for him as trustee by certain individuals, namely, Charles Hull, Orrie Butterfield, Raymond Ketcham and Della Trent.

It appears from the referee's certificate, the petition for review and the briefs of the contending parties, that the objections raised by the trustee were as follows:

1. Contributions imposed under the Illinois Unemployment Compensation Act are not "taxes" within the meaning of the Federal Bankruptcy Act, and, therefore, the Director's claim is not entitled to priority.

2. The enactment of the Chandler Act operated to vitiate the priority formerly accorded to "debts" owing to a State pursuant to Section 64, sub. b (7) of the Federal Bankruptcy Act (11 U.S.C.A. § 104, sub. b (7).

3. Whether regarded as a claim for "taxes" or a "debt" the Director's claim was not filed within six months after the first date set for the first meeting of creditors as required by the Chandler Act (section 57, sub. n, as amended, 11 U.S.C.A. § 93, sub. n).

4. The trustee in bankruptcy, as an officer of the court, was not subject to the provisions of the Illinois Unemployment Compensation Act.

5. If the trustee in bankruptcy is subject to the provisions of the Illinois Unemployment Compensation Act, he is not liable for contributions with respect to services performed in connection with the liquidation of the estate, as distinguished from the carrying on of the bankrupts' business.

6. The services performed by Charles Hull, Orrie Butterfield and Raymond Ketcham for the trustee, were those of independent contractors, and their remuneration was therefore not subject to contributions.

On February 24, 1939, the referee entered an order confirming the trustee's contentions in all respects and disallowed the Director's claim. The Director duly filed a petition for review assigning as errors the findings of the referee with respect to the above issues. On April 3, 1939, upon motion made by counsel for the trustee, the referee struck and deleted from the petition for review certain exhibits, paragraphs and assignments of error. Whereupon, the petitioner duly filed another petition for review asserting that the referee had no power or authority for such striking and deleting. Both petitions for review are now before this court for disposition.

The paramount issue raised by the record and the briefs of the parties is whether contributions provided for under the Illinois Unemployment Compensation Act are "taxes" within the meaning of Section 64, sub. a(4) of the Federal Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(4), which provides: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: * * *."

The law is well settled that the determination whether a given statute imposes a tax within the meaning of the Federal Bankruptcy Act is a Federal question of

ultimate decision in the Federal Court. New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; In re Otto F. Lange Co., D.C., 159 F. 586.

Respondent in his brief contends at length that the enactment of the Illinois Unemployment Compensation Act was an exercise of the police power of the State of Illinois, and that it was not the intention of the General Assembly to create a tax; hence, that the contributions exacted pursuant to such act are not taxes, and therefore not entitled to priority in a bankruptcy proceeding. This position is not well taken. The word "taxes" as used in Section 64, sub. a(4), quoted above, is not to be construed in a limited sense, but must be interpreted to include all types of involuntary exactions, regardless of name, levied by the Federal and State governments for governmental or public purposes, and it is immaterial which attribute of sovereignty, the police or taxing power, was employed in the imposition of such exactions. In re Otto F. Lange Co., supra; Gilbert's Collier on Bankruptcy, 4th Ed., Section 1296, p. 1017. That contributions imposed under unemployment compensation legislation such as the Illinois Unemployment Compensation Act are involuntary exactions levied by government for public purposes is too well established for argument. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Beeland Wholesale Company v. Kaufman et al., 234 Ala. 249, 174 So. 516; Gillum v. Johnson, 7 Cal.2d 744, 62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595; Unemployment Compensation Commission of North Carolina v. Wachovia Bank & Trust Co., 215 N.C. 491, 2 S.E.2d 592; Chamberlin Inc. v. Andrews, 271 N.Y. 1, 2 N.E.2d 22, 106 A.L.R. 1519, affirmed, in 299 U.S. 515, 57 S.Ct. 122, 81 L.Ed. 380; Howes Bros. Company v. Massachusetts Unemployment Compensation Commission, Mass., 5 N.E.2d 720.

In a recent case, In re Oshkosh Foundry Company, D.C., 28 F.Supp. 412, 413, the very point here in issue arose, that is, whether contributions imposed under the Wisconsin Unemployment Reserves and Compensation Act were "taxes" within the meaning of Section 64, sub. a(4), of the Federal Bankruptcy Act. The Court held:

"There are many decisions by the courts giving various definitions of a tax. Some decisions narrowly restrict the meaning of the word, but there is nothing in the provisions of the Bankruptcy Act which justifies any such restricted definition. The words there used are: '* * * taxes legally due and owing by the bankrupt to the United States or state or any subdivision thereof.' There is no justification in such language for a definition in a narrow or restricted sense. Many taxes under other names have been levied for special purposes, which nevertheless have been held by the courts to be for a public purpose, and have been designated as a tax. * * *

"Therefore, the employer contributions, which must be made by employers under the provisions of Chapter 108, Wisconsin Statutes, are a tax within the meaning of Section 64 [sub.] a (4) of the Bankruptcy Act. Claims based upon any such unpaid contributions are entitled to priority."

The case of In re Mosby Coal & Mining Company, D.C., 24 F.Supp. 1022, cited by respondent in support of his contention that contributions imposed under the Illinois Unemployment Compensation Act are not "taxes" within the meaning of the Federal Bankruptcy Act, is not in point. In that case the Treasurer of the Unemployment Compensation Commission of Missouri sought to obtain priority for his claim over secured creditors by contending that it was a tax within the meaning of the Missouri statute (Mo.St.Ann. § 4598a, p. 2039) making "all taxes, or fees, of every character and description, due or owing to the State of Missouri, or any political division thereof, by any * * * domestic corporation * * * a prior lien and a preferred claim against the assets of such corporation." The Court held that the Missouri lien law was not intended to cover claims for contributions imposed under the Missouri Unemployment Compensation Act (Mo.St.Ann. § 13194—1 et seq., p. 4770). The only issue before the court was the construction of the Missouri lien law, in order to determine whether contributions provided for by the Missouri Unemployment Compensation Act were taxes within the meaning of the aforementioned Missouri lien law. Any inference drawn from the court's opinion to the effect that contributions imposed under unemployment compensation legislation are not "taxes" within the meaning of the Federal Bankruptcy Act, must be based on pure dictum.

It must be concluded, therefore, that contributions imposed under the Illinois Unemployment Compensation Act are "taxes"

within the meaning of Section 64, sub. a (4), of the Federal Bankruptcy Act.

The question remains whether petitioner's claim was seasonably filed. Section 57, sub. n, of the Federal Bankruptcy Act, as amended by the Chandler Act, provides: "Except as otherwise provided in this Act [title], all claims provable under this Act [title], including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed: * * *."

■ Prior to the enactment of the Chandler Act, taxing bodies did not have to file tax claims in the absence of a bar order; it was the duty of the trustee to seek out all taxes legally due and to pay them. Gilbert's Collier on Bankruptcy, 4th Ed., paragraph 1084, p. 795, and cases there cited.

Respondent contends that the above-quoted amendment to Section 57, sub. n, of the Federal Bankruptcy Act must be applied here; that inasmuch as appellant's claim was filed on October 24, 1938, more than six months after the first date set for the first meeting of creditors which occurred on April 15, 1938, the requirements of such section have not been satisfied and the claim should be disallowed. Respondent's argument for a retroactive application of the Chandler Act rests solely on the provisions of Section 6 (b) of such act, 11 U. S.C.A. § 1 note, which provides: "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto."

■ The point to be determined, therefore, is whether it is "practicable" to apply Section 57, sub. n, of the Federal Bankruptcy Act, as amended by the Chandler Act, to these proceedings. The overwhelming weight of authority establishes the law to be that upon an adjudication in bankruptcy, the status and rights of the bankrupt, the creditors and the trustee become fixed. In re Prudential Trust Company's Assignment, 223 Pa. 409, 72 A. 798; In re

Wyatt, D.C., 23 F.2d 350; In re John G. Gasteiger & Co., 2 Cir., 25 F.2d 642; In re C. H. Earle, Inc., D.C., 2 F.Supp. 15, affirmed, 2 Cir., 65 F.2d 1013, certiorari denied, Globe Indemnity Co. v. C. H. Earle, 290 U.S. 674, 54 S.Ct. 92, 78 L.Ed. 582; Ford v. Cotter, 8 Cir., 33 F.2d 875, 876, 14 A.B.R.,N.S., 182.

In the last case cited Ford v. Cotter, supra, the question arose whether the Amendatory Bankruptcy Act of 1926 which amended Section 57, sub. n, of the Federal Bankruptcy Act increasing the time for filing claims from six months to one year from the date of adjudication, applied to then pending proceedings. The Amendatory Bankruptcy Act of 1926 contained a provision covering its retroactive application which is exactly the same as Section 6 (b) of the Chandler Act quoted above. The Court held: "The amendatory act was by its terms made effective at the end of three months. This interim of abeyance was doubtless meant to allow an adjustment of pending proceedings to the amended sections of the act. But to apply the new limitation upon the creditors in cases where an adjudication had been made was bound to be of such difficulty, and so productive of irregularity of privilege among creditors, as to disprove an intention to enforce that limitation against them. It was unsatisfactory of application at best, and the uncertainty attending it was calculated to mislead creditors to their loss. The act calls for interpretation also in this respect, and that best sustained is that if, when the act became effective, there had been an adjudication, the former section 57 [sub.] n, allowing one year for proving claims, applied; but, if there had been no adjudication, the amended section applied, fixing six months therefrom as the limitation. The claims of appellees were therefore presented in due time and properly allowed."

■ This court agrees with the opinion in Ford v. Cotter, supra, that it is not "practicable" to apply Section 57, sub. n, of the Chandler Act to bankruptcy proceedings where the property rights of the parties have become vested by adjudications in bankruptcy which preceded the effective date of such act. Accordingly, this court holds that the law as it stood prior to the enactment of the Chandler Act governs these proceedings, and the question of timely filing of the petitioner's claim is irrelevant. It appearing from the record

that no bar order was entered by the referee, and that no distribution of assets was made, it was the duty of the trustee to pay the appellant's claim.

The next issue to be decided is whether a trustee in bankruptcy is liable for contributions under the Illinois Unemployment Compensation Act with respect to individuals who perform services for him in connection with the bankrupt estate. Section 2 (d) of the Illinois Unemployment Compensation Act provides: " 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State. * * *"

■■■ By specifically including "trustees in bankruptcy" in the definition of an "employing unit", the General Assembly definitely stated that such trustees were to be subject to the provisions of the Illinois Unemployment Compensation Act in the same manner and to the same extent as other employing units. Moreover, a trustee in bankruptcy is required to pay all state and local taxes by virtue of 28 U.S.C.A. § 124a, which provides as follows: "Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation: Provided, however, That nothing in this section contained shall be construed to prohibit or prejudice the collection of any such taxes which accrued prior to June 18, 1934, in the event that the United States court having final jurisdiction of the subject matter under existing law should adjudge and decide that the imposition of such taxes was a valid exercise of the taxing power by the State or States, or by the civil subdivisions of the State or States imposing the same."

■■■ Respondent's contention that this section applies only to trustees who are actually carrying on the business of the bankrupt, and not to liquidating trustees, is unconvincing. The phrase "conduct any business" should not receive a narrow and restricted interpretation, but should be construed to include any activity or operation in connection with the handling and management of the bankrupt estate. That this was the intention of Congress is clear from the further language of this section which makes the trustee "subject to all State and local taxes applicable to such business * * * as if such business were conducted by an individual or corporation." Obviously, if the bankrupts themselves liquidated their respective businesses they would each be liable for contributions with respect to services performed for them in connection with such liquidation. There is no judicial warrant for construing Section 124a, quoted above, in such manner as to deprive employees of the trustee of the benefits of coverage under the Illinois Unemployment Compensation Act merely because their services were performed for a trustee in bankruptcy—defined as an "employing unit" in the Illinois Unemployment Compensation Act.

A further objection of the trustee to the Director's claim is that the services performed for him by Charles Hull, Orrie Butterfield and Raymond Ketcham were those of independent contractors, and hence, the remuneration received by them was not subject to contributions in accordance with the Illinois Unemployment Compensation Act.

Section 2 (f) (5) of the Illinois Unemployment Compensation Act provides:

"Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Director that—

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is engaged in an independently established trade, occupation, profession or business."

The General Assembly, by providing a glossary in the Illinois Unemployment Compensation Act, adopted a statutory definition of employment more inclusive than the common law relationship of master and servant. There can be no doubt that the General Assembly had the authority to so implement the Illinois Unemployment Compensation Act even if the statutory definitions differ from those at common law. Southern Photo & Blue Print Co. v. Gore, 173 Tenn. 69, 114 S.W.2d 796; Steinberg v. United States, 2 Cir., 14 F.2d 564, 566; In re Monrovia Evening Post, 1926, 199 Cal. 263, 248 P. 1017, 1020; DeWitt et al. v. State ex rel. Crabbe, 1923, 108 Ohio 513, 141 N.E. 551; O'Boyle et al. v. Parker-Young Co., 95 Vt. 58, 112 A. 385; McDonald v. Levinson Steel Co., 1930, 302 Pa. 287, 153 A. 424; Fisk v. Bonner Tie Co., 1925, 40 Idaho 304, 232 P. 569; Flick v. Industrial Comm. of Colorado, 78 Colo. 117, 239 P. 1022; Chicago & Eastern Ry. Co. v. Kaufman, 1921, 78 Ind.App. 474, 133 N.E. 399; Gallivan v. Wark Co., 1927, 288 Pa. 443, 136 A. 223; McDowell v. Duer, 1922, 78 Ind.App. 440, 133 N.E. 839; Industrial Comm. v. Continental Investment Co., 1925, 78 Colo. 399, 242 P. 49; Fox v. Standard Oil Co., 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780. It must also be observed that the term independent contractor is nowhere used in the statute. The issue to be decided, therefore, is not whether the aforementioned individuals were independent contractors, or whether the common law relationship of master and servant existed, but, whether their services constituted "employment" as defined by Section 2 (f) (5) of the Illinois Unemployment Compensation Act, quoted above. Industrial Commission of the State of Colorado v. Northwestern Mutual Life Insurance Co., 103 Colo. 550, 88 P.2d 560; Unemployment Compensation Commission of North Carolina v. Jefferson Standard Life Ins. Co., 215 N.C. 479, 2 S.E.2d 584.

According to the last mentioned section, "Services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Director that—" the conditions set forth in subsections (A), (B) and (C) have been met. It must be noted that these requirements are stated in the conjunctive and the burden of proof is upon the employing unit to satisfy all of them. Industrial Commission of the State of Colorado v. Northwestern Mutual Life Insurance Co., supra; Unemployment Compensation Commission of North Carolina v. Jefferson Standard Life Ins. Co., supra. All that appears in the record with reference to the nature of the services performed by Charles Hull, Orrie Butterfield and Raymond Ketcham is the testimony of the trustee given before the referee at the hearing on January 30, 1939. None of these employees testified. The trustee's testimony is of no assistance in determining the question because his replies indicate that his knowledge of the conditions and circumstances under which the aforementioned individuals performed their services is hazy and incomplete. His testimony is particularly unenlightening with reference to whether Hull, Butterfield and Ketcham were independently established within the meaning of Subsection (C) of Section 2 (f) (5). Under such circumstances, this court must hold that the trustee failed to meet the burden of proof required by Section 2 (f) (5) of the Illinois Unemployment Compensation Act in order to exempt him from liability for payment of contributions, and that therefore Charles Hull, Orrie Butterfield and Raymond Ketcham must be considered to have been in the "employment" of the trustee within the meaning of the Illinois Unemployment Compensation Act.

Several other questions were raised by the petitioner in another petition for review with respect to the order of the referee striking and deleting certain portions of the initial petition for review filed before the referee. Since these portions were properly stricken, the questions raised by such stricken portions are not before this court.

It is therefore ordered that this cause be remanded to the referee for further proceedings in accordance with this opinion.