**In re Donald L. SONNER d/b/a Blackbeard's Seafood and Blackbeard's Restaurant, Debtor.**

**Bankruptcy No. 80–01317.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 17, 1985.

Robert T. Copeland, Abingdon, Va., for Donald L. Sonner.

Stephen A. Winkleman, Winkelman & Mann, Stanley M. Salus, Doctor, Doctor & Salus, Washington, D.C., Ethan Allen Turshen, Arlington, Va., for Creditor's Trust.

Stuart Fishbein, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Elsie L. Munsell, U.S. Atty., E.D. Virginia, Alexandria, Va., for the U.S.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The instant matter arises upon the filing of a Motion to Determine Tax Liability by the Internal Revenue Service ("IRS"). Neither the facts of the case nor the ultimate issue involved is in dispute.

On November 17, 1980, Donald L. Sonner ("Sonner"), debtor herein, filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, the Bankruptcy Reform Act of 1978 ("the Bankruptcy Code"), 11 U.S.C. § 101 *et seq.* A Chapter 11 Plan of Reorganization ("the plan") was confirmed by this Court on February 1, 1982. The plan required the debtor to convey his interest in certain parcels of real property to a creditors' trust. The Creditors' Trust ("trust") was established with the confirmation of the plan to liquidate the parcels by certain target dates at certain target prices for the benefit of Sonner's creditors up to the amount of their agreed or approved claims. Moreover, Sonner executed a promissory note for the total amount of the approved debt, said note being secured by a deed of trust on certain real property of the debtor.

As more specifically described in the plan, the duties of the trust and of its elected trustee consisted of: (1) marketing and selling debtor's real property; (2) holding and distributing proceeds from the sale of debtor's real property to the various classes of creditors in accordance with the terms of the plan; (3) collecting amounts due to the trust on a note executed by debtor to the trust; (4) executing a deed of trust to secure the above note; (5) foreclosing on debtor's realty should debtor default on his note to the trust; and (6) monitoring the continuation of debtor's businesses to insure that these businesses are operated in accordance with the terms of the plan.

Pursuant to the provisions of the plan and the terms of the trust agreement, by which Sonner and his former spouse irrevocably assigned their interest in certain parcels of real property to the trustee of the Creditor's Trust, the trustee was successful in selling certain of those aforementioned parcels. Neither the debtor nor the trustee, however, filed tax returns disclosing the gains realized from the sales of the real estate. As a result, the IRS filed a motion to determine tax liability. As agreed to by both the IRS and the trustee of the Creditors' Trust, the specific issue in this case is whether the Creditors' Trust is the entity responsible for the payment of tax resulting from the sale of the parcels of real estate.

Initially, the trustee argues that the trust is a "security instrument" in that it was established to hold the debtor's real property as a security interest to secure a promissory note from the debtor. The promissory note was executed by Sonner in the amount of all of the allowed or approved claims owed to unsecured creditors. Because Sonner had the right to sell some of the properties prior to the target date with the approval of the trust, the trustee argues that the parcels of real property were treated as Sonner's properties subject to the security interest of the trust.

Secondly, the trustee maintains that the trust is not an economically independent entity in that Sonner, as the grantor, can be regarded as the substantial owner of the trust. The trustee's position is founded on Internal Revenue Code Regulation § 1.677(d), which states in pertinent part:

(d) *Discharge of legal obligation of grantor or his spouse.* Under section 677 [of the Internal Revenue Code] a grantor is, in general, treated as the owner of a portion of a trust whose income is, or in the discretion of the grantor or a nonadverse party, or both, may be applied in discharge of a legal obligation of the grantor....

Rev.Reg. § 1.677(d). Thus, the trustee argues that Sonner, the substantial owner of the trust, is the party responsible for reporting any gains realized from the sale of the real estate which constitutes the *res* of the trust.

Furthermore, the trustee contends that there was only one taxable event which resulted in a gain. That event which should result in a tax liability for Sonner is the debtor's conveyance of the properties to the trust in exchange for a discharge of his debts. The trustee argues that because income is realized when indebtedness is forgiven, *United States v. Kirby Lumber Co.*, 284 U.S. 1, 1, 52 S.Ct. 4, 4, 76 L.Ed. 131 (1931), Sonner realized a taxable gain to the extent of the discharged indebtedness received in exchange for his conveyance of the properties to the trust.

In keeping with the above argument, the trustee contends that the creditors took a basis of the fair market value of the properties Sonner conveyed to the trust up to the amount of their prorated approved claims. Because the creditors only realized a return up to the amount of their approved claims on the subsequent sales of the properties, the trustee maintains that the conveyances did not result in any gain taxable to the creditors.

Finally, the trustee maintains that because of his compliance with section 505 of the Bankruptcy Code, the IRS is prohibited from claiming that any tax is due based on the conveyances of the properties. Section 505 provides in pertinent part:

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and any successor to the debtor are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits;

(2) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or

(3) upon payment of the tax determined by such governmental unit to be due.

11 U.S.C. § 505(b). The trustee requested a sixty-day audit for the years 1982 and 1983. There is no doubt but that the IRS made no response to that request.

The IRS contends that the trust is the specific taxable entity responsible for reporting the gains realized from the sales of the parcels of real property. Under the terms of the plan of reorganization, the IRS maintains that the trust is the entity established to execute the terms of the plan. The IRS also contends that the trust is not to be excluded from tax liability as a grantor trust because the trustee has an interest adverse to that of the grantor. *See* Rev.Reg. § 1.677(d) *supra.*

Furthermore, the IRS maintains that because the trust has its genesis in an order of this Court confirming debtor's plan of reorganization, the trustee falls within the ambit of section 960 of Title 28 of the United States Code. Section 960 provides:

Any officers and agents *conducting any business* under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960 (emphasis added). Under the IRS' theory of liability, the trust is a liquidating trust by which vehicle the parcels of real property are to be sold and the proceeds thereof to be distributed to the unsecured creditors in the amount of their approved or allowed claims. The IRS argues that such liquidation constitutes the "conducting any business" requirement contained in section 960. *See In Re I.J. Knight Realty Corp.*, 501 F.2d 62, 67 (3d Cir.1974).

Finally, the IRS refers the Court to the Bankruptcy Tax Act of 1980, Pub.L. No. 96–589, 96th Cong., 2d Sess. (1980), for guidance with respect to Congress' view on taxing entities which have filed reorganization petitions. Although both the IRS and the trustee agree that the Bankruptcy Tax Act of 1980 does not govern the instant case, the IRS espouses the novel theory that the tax act is "not applicable [but] ... it is illustrative."[1] There is no doubt, however, but that Congress did intend to tax the income of bankruptcy estates even before the advent of the Bankruptcy Tax Act of 1980. *Williams v. United States*, 667 F.2d 1108, 1110 (4th Cir.1981).

A review of the record, including the plan of reorganization confirmed February 1, 1982, indicates that the intent of the debtor and of the creditors was to use the Creditors' Trust as a vehicle to liquidate the properties conveyed to the trust, to pay

the unsecured creditors the amount of their allowed or approved claims and to return any excess proceeds to the debtor. Whether the developers of the plan of reorganization envisioned capital gains tax liability for the trust is not relevant if such liability is, in fact, the result. *Commissioner of Internal Revenue v. National Alfalfa Dehydrating and Milling Co.*, 417 U.S. 134, 148–49, 94 S.Ct. 2129, 2136–37, 40 L.Ed.2d 717 (1974).

A number of arguments offered by the trustee and by the IRS in support of their respective positions do not survive even a cursory inspection and may be disposed of preliminarily.

Initially, the trustee argues that the Creditors' Trust is merely a "security instrument." The facts of this case, including the terms of the plan of reorganization, simply do not support such an assertion. As both parties admit in their memoranda, the trust is the mechanism created by the plan by which the terms of the plan are to be carried out. As recognized earlier, these activities include liquidating the parcels of real property and distributing the proceeds of the conveyances to the unsecured creditors.

The trustee also argues that the taxable event under the plan of reorganization was Sonner's conveyance of the properties to the Creditors' Trust in exchange for the discharge of his indebtedness. The trustee bases this argument on the rule of law that debt forgiveness constitutes income to the debtor in the amount of the debt forgiven. *United States v. Kirby Lumber Co.*, 284 U.S. 1, 1, 52 S.Ct. 4, 4, 76 L.Ed. 131 (1931). Under the circumstances of this case, however, income is not realized by a debtor, a bankruptcy estate or a successor to the debtor by reason of a discharge of indebtedness in a bankruptcy proceeding. 11 U.S.C. § 346(j)(1).

The third position which may be dismissed preliminarily is the IRS' citation of

---

**1.** Section 7(b) of the Bankruptcy Tax Act of 1980, Pub.L. No. 96–589, 96th Cong., 2d Sess. (1980), states that the act will affect those bankruptcy cases filed ninety days after the act's date

of enactment. The bill was signed into law December 24, 1980. The petition in the case *sub judice* was filed November 17, 1980.

the Bankruptcy Tax Act of 1980 as authority in this case. Initially, of course, the Congress of the United States clearly indicated that the act would affect only those cases filed ninety days after its enactment[2]. Accordingly, a citation to the act's provisions as a source of guidance with respect to a bankruptcy proceeding filed one month prior to the enactment of the legislation is of questionable relevance in light of such a clear indication of Congress' intent to limit the legislation's applicability. Furthermore, even if the act was apposite, the citation by the IRS of sections 1398(g), 1398(f)(1) and 1398(f)(2) of Title 26 of the United States Code, which were added by the act, are not helpful with respect to the case at bar.

Sections 1398(f)(1) and 1398(f)(2) respectively provide that a transfer of an asset by a debtor to an estate and from an estate to a debtor are not treated as dispositions for tax purposes. Section 1398(g) addresses the succession by an estate to certain tax attributes of the debtor. The thrust of the IRS' argument is that there was no realization event for tax purposes until the sales of the properties by the trust in 1982, 1983 and 1984. If such is the case, citation to the above sections is not helpful in determining against which entity the capital gains tax should be assessed. If, in fact, the trust is a grantor trust, Sonner as the grantor of the trust would be liable for any tax on trust income irrespective of the Bankruptcy Tax Act of 1980. References to authorities other than the aforementioned act will be determinative of the issue at bar.

The first substantive argument which should be addressed by this Court is whether the Creditors' Trust is a grantor trust as defined under subpart E of Subchapter J of the Internal Revenue Code, 26 U.S.C. §§ 671–79. Under these provisions, a grantor who has retained certain powers which may be exercised without the approval or consent of an adverse party is treated as the owner of the trust and is taxed individually. *United States v. But-*

*torff,* 563 F.Supp. 450, 454 (N.D.Tex.1983), *aff'd,* 761 F.2d 1056, 1060–61 (5th Cir.1985). This retention of control may be manifested by either the grantor's or a nonadverse party's ability to control the beneficial enjoyment of the corpus or the income therefrom, to revoke the trust or a portion thereof, or to receive income from the trust, actually or constructively. 26 U.S.C. §§ 675, 676, 677. A nonadverse party is any person who is not an adverse party. Rev.Reg. § 1.672(b)–1. An adverse party is a person having a "substantial beneficial interest" in the trust which would be adversely affected by the exercise or nonexercise of the power he possesses with respect to the trust. 26 U.S.C. § 672(a). A trustee is not an adverse party merely because of his interest as a trustee, but a beneficiary ordinarily will have an adverse interest. Rev.Reg. §§ 1.672(a)–1(a), (a)–1(b).

Under section 677(a) of the Internal Revenue Code, a grantor of a trust is treated as the owner of the trust if the income of the trust is "or, in the discretion of the grantor or a non-adverse party, or both, may be" applied in discharge of a legal obligation of the grantor. 26 U.S.C. § 677(a); *see* Rev.Reg. § 1.677(a)–1(d). There is no doubt but that the income of the trust is being applied to discharge legal obligations of the debtor. The IRS argues that the trust is not a grantor trust because the interest of the trustee in representing all creditors constitutes the trustee as an adverse party. The IRS cites two decisions of the Ninth Circuit Court of Appeals, *DePinto v. United States,* 585 F.2d 405 (9th Cir.1978), and *Richardson v. United States,* 552 F.2d 291 (9th Cir.1977) (per curiam), in support of this position.

The IRS initially cites both the *DePinto* and *Richardson* decisions for the very broad proposition that grantor trusts are not cognizable in a bankruptcy proceeding. In *Richardson,* a bankrupt sought to deduct unused losses sustained by the bankruptcy trustee in administering the bank-

---

**2.** *See* note 1 *supra.*

ruptcy estate in his personal tax return filed jointly with his spouse. 552 F.2d at 292. The Ninth Circuit Court of Appeals held that the unused loss carryovers are available only to those individuals "whose beneficial interest in an estate or trust derives from bequest, gift, devise, or inheritance." *Id.* The *Richardson* court held that the interest of a bankrupt in his estate "is not donative in origin...." *Id.*

In *DePinto,* a case somewhat similar to *Richardson,* the bankrupt sought to deduct from his personal tax return certain payments made by the bankruptcy trustee. 585 F.2d at 407. In support of his claim, the bankrupt argued that because he had a reversionary interest in the assets of the estate and because the administration of the bankruptcy estate resulted in full payment to creditors of the amount of their allowed claims, the bankruptcy estate qualified as a grantor trust. *Id.* The Ninth Circuit Court of Appeals ruled in *DePinto* that one who files a petition does not make a donative transfer but does release the dominion and control necessary to constitute a grantor trust. *Id.* Furthermore, the court held that no legislative intent existed to apply the provisions of Subchapter J of the Internal Revenue Code to an individual bankruptcy. *Id.*

In both *Richardson* and *DePinto,* the bankrupts were attempting to elicit benefits from bankruptcy proceedings which certainly were not envisioned by Congress in enacting bankruptcy legislation. In both cases, the bankrupts argued that on-going bankruptcy estates constituted Subchapter J trusts. Furthermore, the bankrupts attempted to liken their filing of a petition in bankruptcy to the donative act of a settlor establishing a trust. These elements are missing from the instant case.

Under section 1141 of the Bankruptcy Code, confirmation of a plan of reorganization vests the property of the estate in the debtor, or in the debtor's successor as set forth in the plan. *See* 11 U.S.C. § 1141(b). Thus, there is no claim that Sonner's estate constitutes a trust. With the confirmation of the plan the estate was terminated, and

the Creditors' Trust was established as the entity which was to implement the plan of reorganization. Unlike the bankrupts in *DePinto* and *Richardson,* Sonner acted to establish the trust by agreeing to the plan of reorganization and conveying certain properties to the trust. These acts go much further than the mere filing of a bankruptcy petition.

Separate and apart from the *DePinto* and *Richardson* decisions, there exists one aspect of the grantor trust argument which is not addressed by either the IRS or the trustee. The language of Internal Revenue Code Regulation section 1.677(a)–1(d) clearly states that a trust whose income is used to discharge a legal obligation of the grantor is a grantor trust. The same regulation states that if a grantor or a nonadverse party may, in their discretion, use trust income to satisfy legal obligations of the grantor, the trust is a grantor trust. Rev.Reg. § 1.677(a)–1(d).

If, in fact, the IRS is correct and the trustee is an adverse party, both the IRS and the trustee have ignored the language of the regulation which requires a use of discretion. At this point, neither the trustee, nor Sonner, nor anyone else, can decide whether to disburse the proceeds of the sales to satisfy the legal obligations of Sonner. The provisions of the plan control and both Sonner and the Creditors' Trust have the duty and responsibility of carrying out the plan. *See* 11 U.S.C. § 1142(a). The trust was created for no other reason but to pay Sonner's debts and, under the terms of the plan, the mandate is clear that they must be paid.

Although section 677 of the Internal Revenue Code is worded differently than Revenue Regulation section 1.677(a)–1(d), the result, not surprisingly, is the same. Under section 677, the grantor of a trust is treated as the owner of the trust if the "income *without the approval or consent of any adverse party* is, or, in the discretion of the grantor or a nonadverse party, or both, may be—(1) distributed to the grantor...." 26 U.S.C. § 677(a) (emphasis added). Certainly, no approval or consent

of the trustee or any other person, adverse or otherwise, is required to distribute the sale proceeds in accordance with the provisions of the plan of reorganization.

In support of its position that the Creditors' Trust is a grantor trust, the trustee cites a 1971 decision of the United States District Court for the Central District of California as being directly on point. *Stockton v. United States*, 335 F.Supp. 984, 986 (C.D.Cal.1971). In *Stockton*, the plaintiff, who was seeking a refund of income taxes, and his three corporations entered into an agreement with certain creditors to transfer business assets to one Rattner. 335 F.Supp. at 985. Rattner was to liquidate the property and disburse the proceeds to the creditors to discharge certain obligations of the corporations that Stockton had guaranteed. *Id.* The *Stockton* court held that the transfer of properties to Rattner was an assignment for the benefit of creditors which constituted a trust. *Id.*

The *Stockton* court further held that because the purpose of the trust was to pay off Stockton's continuing indebtedness, Stockton was to be treated as the owner of the trust for income tax purposes. *Id.* The *Stockton* case was not a bankruptcy proceeding but the trustee argues that this is not a relevant distinction because the creation of the trust and conveyance of properties to the trust in the instant case did not occur while the bankruptcy estate was still in existence. The IRS argues that the distinction is relevant in that section 1141(c) of the Bankruptcy Code alters the result "because Donald L. Sonner's debts have been discharged in full whether or not his creditors are paid in full" in that the creditors can only look to the corpus of the trust for satisfaction. Based on this Court's consideration of both the grantor trust provisions of the Internal Revenue Code and the *Stockton* opinion, this Court is unable to limit *Stockton* to a non-bankruptcy situation. Whether Sonner is discharged in bankruptcy has no effect on the provisions of the plan which without modification of this Court must be carried out. Furthermore, Sonner's discharge is irrelevant as to the effect that the Internal Revenue Code has with respect to the tax attributes of the plan. As a result, there seems little doubt but that the trust is a grantor trust as defined in Subchapter J of the Internal Revenue Code.

The second substantive argument which must be addressed is the citation by the IRS of section 960 of Title 28 of the United States Code as authority to impose liability for capital gains tax on the Creditors' Trust. As indicated earlier, section 960 imposes the same tax obligation on any officer or agent of the United States who is conducting any business as would be otherwise imposed on the business were it conducted by any other individual or corporation. 28 U.S.C. § 960.

The IRS maintains that the Third Circuit Court of Appeals based its decision that a non-operating trustee was liable for capital gains taxes on properties sold by the trustee on section 960. *In re I.J. Knight Realty Corp.*, 501 F.2d 62 (3rd Cir.1974). In fact, the *Knight* court specifically held that "[s]ection 960 of the Judicial Code was not intended to establish or limit substantive income tax liability." *Id.* at 66. Similarly, the Fourth Circuit Court of Appeals in discussing section 960 stated:

> The government also suggests tax liability can be predicated on 28 U.S.C. § 960. We would find it difficult to infer on anything less than the clearest language that Congress intended to create a tax liability in any statute outside the Internal Revenue Code. We therefore reject this suggestion.

*Williams v. United States*, 667 F.2d 1108, 1110, 1111 n. 3 (4th Cir.1981).

Although the *Knight* court did determine that a non-operating trustee of a bankrupt corporation was liable for the payment of federal taxes on income generated during the liquidation and distribution of the bankrupt estate, the decision was based on certain sections of the Internal Revenue Code. 501 F.2d at 66. The *Knight* court determined that section 6012(b) of the Internal Revenue Code required that:

In a case where a ... trustee in bankruptcy ..., by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all the property or business of a corporation, whether or not such property or business is being operated, such ... trustee ... shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.

501 F.2d at 64 *quoting* 26 U.S.C. § 6012(b)(3). Section 6151 of the Internal Revenue Code requires that the person who is required to file a return of tax is obligated to pay that tax. 26 U.S.C. § 6151. Determining that "return of income" and "return of tax" were synonymous terms, the *Knight* court held that if a trustee in bankruptcy was required to file a return under section 6012, the trustee must then pay taxes generated by the bankrupt estate as reported on the section 6012 return. 501 F.2d at 64, 66.

The above aspect of the *Knight* decision was not discussed by either of the parties. The trustee distinguishes the case based on the factual distinction that he is not a trustee in bankruptcy, the Creditors' Trust is not the estate and the sales of property by the trust occurred after the termination of the estate. These distinctions are all very relevant. Furthermore, the Court notes that section 6012(b), which is substantively the same today as it was when discussed by the *Knight* court, by its terms limits itself to trustees in bankruptcy or assignees of a corporation. The Internal Revenue Code defines a "corporation" as including "associations, joint-stock companies, and insurance companies." 26 U.S.C. § 7701(a)(3). Of course, the instant case features an individual, rather than a corporate, debtor.

There is still to be addressed the merits of assigning the trustee liability for capital gains taxes based on section 960. The key as to whether such liability lies in this case is a determination by this Court whether the trustee's liquidation and distribution of the parcels of real property is

"conducting any business" under section 960. The above discussion illustrates why the case cited by the IRS, *In re Knight Realty Corp.*, 501 F.2d at 62, as to this issue is not very helpful. There does appear, however, to be a split in authority as to whether a liquidating trustee is conducting business. *Compare Matter of Cusato Bros. Intern., Inc.*, 750 F.2d 887, 891 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 2707, 86 L.Ed.2d 722 (1985); *California State Board of Equalization v. Goggin,* 245 F.2d 44, 46–48 (9th Cir.), *cert. denied,* 353 U.S. 961, 77 S.Ct. 863, 1 L.Ed.2d 910 (1957); *In re Sheldon's, Inc. of Maine,* 28 B.R. 568, 570 n. 2 (Bankr.D.Me.1983); *and In re Supergrate Open Steel Flooring Co.,* 1 B.R. 660, 664 (Bankr.C.D.Cal.1979) *with In re Hatfield Construction Co.,* 494 F.2d 1179, 1181 (5th Cir.1974); *United States v. Sampsell,* 266 F.2d 631, 635 (9th Cir.1959) (per curiam); *State of Missouri v. Gleick,* 135 F.2d 134, 137 (8th Cir.1943); *In re Loehr,* 98 F.Supp. 402, 403 (E.D.Wis. 1950); *In re Mid America Co.,* 31 F.Supp. 601, 606 (S.D.Ill.1939); *and In re Sunrise Construction Co.,* 39 B.R. 668, 669–70 (D.Wyo.1984.).

The most recent decision on this issue was rendered by the Eleventh Circuit Court of Appeals in *Matter of Cusato Bros. Intern., Inc.,* 750 F.2d 887, 891 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 2707, 86 L.Ed.2d 722 (1985). In a thorough discussion of the applicable case law, the Eleventh Circuit held that a liquidating trustee was not "conducting any business" under section 960. 750 F.2d at 891. Courts which have determined that a trustee may not be taxed pursuant to section 960 have held the tax to be an impermissible burden upon the liquidation process, *In re Leavy,* 85 F.2d 25, 26–27 (2d Cir.1936) (although tax could not be assessed against trustee-vendor, tax could be assessed against purchaser); *In re Rhea,* 17 B.R. 789, 792 (Bankr.W.D.Okla.1982), or have narrowly construed the language of the section to refer only to the conduct of a business' day-to-day affairs. *See, e.g., In re Cusato Bros. Intern., Inc.,* 750 F.2d at 891; *Cali-*

*fornia State Board of Equalization v. Goggin,* 245 F.2d at 47–48.

The majority of the decisions discovered by this Court which have held a liquidating trustee liable for federal, state or local taxes have based their decisions on the rationale of *In re Mid America,* 31 F.Supp. 601, 606 (S.D.Ill.1939). *See, e.g., State of Missouri v. Gleick,* 135 F.2d at 137; *In re Loehr,* 98 F.Supp. at 403; *In re Sunrise Construction Co., Inc.,* 39 B.R. at 669–70. In *Mid America,* the State of Illinois sought to collect state unemployment compensation contributions from a trustee in bankruptcy who had engaged individuals to perform services in connection with the administration of the bankrupt estate. 31 F.Supp. at 603. One of the trustee's objections to the state priority tax claim was that a liquidating trustee was not "conducting any business." *Id.* at 606. The *Mid America* court determined that "[t]he phrase 'conducting any business' should not receive a narrow and restricted interpretation, but should be construed to include any activity or operation in connection with the handling and management of the bankrupt estate." *Id.*

However, the *Mid America* court was ruling on the liability for taxes assessed because of services rendered on behalf of the bankrupt estate, not assessed because of income directly generated by the sale of assets in liquidation of an estate. The *Mid America* court made this clear when it stated that "if the bankrupts themselves liquidated their respective businesses they would each be liable for contributions with respect to *services performed for them* in connection with such liquidation." *Id.* (emphasis added). The decisions which have imposed taxes on the liquidation of bankruptcy estates generally are distinguishable from the instant case in that: the taxes are assessed against a purchaser, not against the trustee as vendor; the act of liquidation was indistinguishable from the ordinary nature of the estate's business, or the liability for taxes was incurred by actions underlying the liquidation as in *Mid America.* As a result, one court has stated that "[n]o court has held a true liquidat-ing trustee subject to federal income taxation under 28 U.S.C. § 960." *In re Samoset Associates,* 14 B.R. 408, 414 (Bankr.D. Me.1981) and cases cited therein. There is no doubt but that the trustee in the instant case is a liquidating trustee similar to the trustee in *Cusato Brothers.* Although the Eleventh Circuit's decision in *Cusato Brothers* is not binding on this Court, the decision is well-reasoned and appears to be a proper application of the law. Thus, this Court finds not only that the trust is a grantor trust under Subchapter J of the Internal Revenue Code, but also that the trustee is not "conducting any business" under section 960.

Based on the above findings of this Court, a discussion of the final substantive argument is not necessary. However, a brief discussion of section 505(b) of the Bankruptcy Code would seem appropriate. The trustee argues that his compliance with section 505(b) of the Bankruptcy Code prohibits the IRS from claiming that any tax is due. In accordance with section 505(b), the trustee requested an expedited 60-day audit of the trust fiduciary returns filed for the years 1982 and 1983. The IRS did not respond to the trustee's request within the 60-day period. Pursuant to section 505(b), unless a return is fraudulent or contains a material misrepresentation, "the trustee, the debtor, and any successor to the debtor are discharged from any liability" for any tax incurred during the administration of the estate for the period covered by the filed return. There has been no suggestion that the returns were in any way fraudulent or contained material misrepresentations. The IRS has failed to address this argument, but it is interesting to note that the IRS did send a letter to the trustee saying the 1982 return was accepted as filed. Additionally, although the trust sold a parcel of real property in 1982, the IRS did not allege any tax liability against the trust for the year 1982 in its Motion to Determine Tax Liability. The IRS has offered no explanation as to these inconsistent positions.

Accordingly, it is the finding of this Court for all of the above reasons that the Creditors' Trust is not the entity responsible for reporting or paying any capital gains tax that might have been incurred by the sale of the parcels of real property pursuant to the provisions of the Plan of Reorganization and the terms of the trust agreement.

An appropriate Order will enter.